**Nahum BERRIOS, Petitioner–Appellant,**

**v.**

**UNITED STATES of America, Respondent–Appellee.**

**No. 46, Docket 96–2440.**

United States Court of Appeals, Second Circuit.

Argued Sept. 12, 1997.

Decided Oct. 17, 1997.

Devin McLaughlin, Langrock Sperry and Wool, Middlebury, VT (Peter F. Langrock, of counsel), for Petitioner–Appellant.

Emily Berger, Assistant United States Attorney for the Eastern District of New York,

Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, Eric Friedberg, Assistant United States Attorney, of counsel), for Respondent–Appellee.

Before: WINTER, Chief Judge, FEINBERG, Circuit Judge, and BAER, District Judge.*

WINTER, Chief Judge:

■ Nahum Berrios appeals from his resentencing by Judge Dearie. On March 6, 1991, Berrios originally pleaded guilty to a charge of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846. In April, he was sentenced to 210 months in prison. Thereafter, the United States Sentencing Guidelines ("Sentencing Guidelines") were amended in a way that permitted Berrios to seek a reduction of his sentence pursuant to Sentencing Guidelines § 1B1.10.[1] The government did not oppose the motion, and Judge Dearie resentenced Berrios to 168 months in prison. On appeal,[2] Berrios raises an issue that he did not present to the district court. He claims that an

---

* The Honorable Harold Baer, Jr., of the United States District Court for the Southern District of New York, sitting by designation.

1. Section 1B1.10 was amended to read:

   (a) Where a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, a reduction in the defendant's term of imprisonment is authorized under 18 U.S.C. § 3582(c)(2). If none of the amendments listed in subsection (c) is applicable, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not consistent with this policy statement and thus is not authorized.

   (b) In determining whether, and to what extent, a reduction in sentence is warranted for a defendant eligible for consideration under 18 U.S.C. § 3582(c)(2), the court should consider the sentence that it would have imposed had the amendment(s) to the guidelines listed in subsection (c) been in effect at the time the defendant was sentenced.

   (c) Amendments covered by this policy statement are listed in Appendix C as follows: 126, 130, 156, 176, 269, 329, 341, 371, 379, 380, 433, 454, 461, 484, 488, 490, 499, 505, 506, and 516.

   U.S.S.G. § 1B1.10 (1995).

2. The day after Berrios was resentenced, the President signed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214. Among other things, chapter 153 of the AEDPA amended 28 U.S.C. § 2253 to prohibit the taking of appeals in proceedings under 28 U.S.C. § 2255 unless "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c). Berrios' notice of appeal was filed after the effective date of the AEDPA, but he did not seek a certificate of appealability ("COA"). Instead, he requested and received a certificate of probable cause ("CPC") from the district court.

When this appeal was filed, there were undecided issues concerning whether Berrios was required to obtain a COA. On September 26, 1996, we ordered the parties to brief: (i) whether a district court has authority to issue a COA; (ii) whether a COA is required where, as here, the order from which a COA is sought was decided before AEDPA's enactment, but the appeal was not filed until after AEDPA's enactment; and (iii) if so, whether the district court's issuance of a CPC satisfied the COA requirement.

These questions are no longer open. As to the first question, we held in *Lozada v. United States* that "district judges have authority to issue COAs in section 2255 cases." 107 F.3d 1011, 1016 (2d Cir.1997). The second issue was resolved by the Supreme Court's decision in *Lindh v. Murphy* and the cases following it. *See Lindh*, —— U.S. ——, ——, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997) ("the new provisions of chapter 153 [of the AEDPA] generally apply only to cases filed after the Act became effective."); *United States v. Skandier*, 125 F.3d 178, 180 (3d Cir.1997) (holding that section 2253(c) "should not apply to a § 2255 motion that was filed before AEDPA's effective date"); *Arredondo v. United States*, 120 F.3d 639, 640 (6th Cir.1997) (under *Lindh*, § 2255 petition pending at the time of AEDPA's enactment not subject to COA requirement); *United States v. Carter*, 117 F.3d 262, 264 (5th Cir.1997) ("[Section] 2255 appellants are not subject to this COA requirement unless their § 2255 petitions were filed in the district court after the AEDPA's effective date of April 24, 1996."); *cf. Nelson v. Walker*, 121 F.3d 828, 832–33 (2d Cir.1997) (holding that habeas petition filed before AEDPA's effective date not subject to "specified issues" prong of COA requirement); *but see Tiedeman v. Benson*, 122 F.3d 518, 520–21 (8th Cir.1997) (holding that AEDPA applies to application for COA filed after AEDPA's effective date even where habeas petition filed before AEDPA's enactment).

Even though Berrios filed his notice of appeal after AEDPA's effective date, he filed his § 2255 petition three months before AEDPA became effective. The Third Circuit recently addressed the same situation in *Skandier* and concluded that, under *Lindh*, the COA provisions in § 2253(c) do not apply "to an appeal taken after the effective

amendment to Sentencing Guidelines § 1B1.10(b), promulgated after his original sentencing, violates the *Ex Post Facto* Clause of the Constitution, art. I, § 9, cl. 3, because it prevented the court from further reducing his sentence based on certain other amendments to the Sentencing Guidelines. Because Berrios' attorney did not raise this argument at the resentencing, Berrios asserts that he was provided ineffective assistance of counsel. We disagree.

■ At the time of Berrios' original sentencing, Sentencing Guidelines § 1B1.10(a) authorized a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) [3] when the Sentencing Guidelines range is lowered subsequent to the original sentencing. However, such a reduction was authorized only in the case of Sentencing Guidelines amendments designated in § 1B1.10(c). [4] After Berrios was originally sentenced, § 2D1.1 of the Sentencing Guidelines was amended to lower the base-offense level for violations of 21 U.S.C. § 846; this amendment was designated in § 1B1.10(c) as a possible basis for a reduction in sentence under § 1B1.10(a). These changes were the basis for Berrios' successful motion to reduce his sentence.

The issue in this appeal arises from an amendment to § 1B1.10(b). At the time of Berrios' original sentencing, § 1B1.10(b) provided that, in resentencing proceedings under § 1B1.10(a), the court, in determining whether and to what extent a reduction in sentence is warranted, "should consider the sentence that it would have originally imposed had the guidelines, *as amended*, been in effect at that time." U.S.S.G. § 1B1.10(b) (1992) (emphasis in original). Application Note 1 explained that the Sentencing Guidelines range on resentencing was "to be determined by applying *all* amendments to the guidelines (*i.e.*, as if the defendant was being sentenced under the guidelines currently in effect)." *Id.* (emphasis added).

Amendment 504 to the Sentencing Guidelines, effective November 1, 1994, altered the pertinent language in § 1B1.10(b) to provide that in determining whether and to what extent a reduction in sentence is warranted, "the court should consider the sentence that it would have imposed had the *amendment(s) to the guidelines listed in subsection (c)* been in effect at the time the defendant was [originally] sentenced." U.S.S.G. § 1B1.10(b) (1995) (emphasis added). Application Note 2 explains that, in determining the amended Sentencing Guidelines range, "the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced. All other guideline application decisions remain unaffected." *Id.* Thus, the difference between the old scheme and the new one is that, under the old scheme, a defendant would be resentenced under the then-effective version of the Sentencing Guidelines, while, under the new scheme, a defendant would be resentenced under the version of the Sentencing Guidelines applicable to the original sentence unless a pertinent amendment was expressly designated in § 1B1.10(c).

Berrios' *ex post facto* argument is that, because § 1B1.10(b) was amended between the time he was originally sentenced and the time he was resentenced, and because, also during that period, several other amendments to the Sentencing Guidelines were promulgated that would have benefitted him under the prior, but not the later, version of

date of the AEDPA from an order denying a motion under 28 U.S.C. § 2255 that was filed before that date." *Skandier,* 125 F.3d at 179 (footnote omitted). We agree with the Third Circuit's reading of *Lindh,* and conclude that Berrios need have obtained only a CPC.

**3.** 18 U.S.C. § 3582(c)(2) reads:

in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(*o*), upon motion of the

defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

**4.** At the time Berrios was sentenced the current § 1B1.10(c) was Sentencing Guidelines § 1B1.10(d). To avoid confusion we will refer to this section throughout this opinion as Sentencing Guidelines § 1B1.10(c).

# 433

§ 1B1.10(b), the amendment to § 1B1.10(b) is both "retrospective" and "disadvantageous." *See Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (to violate *Ex Post Facto* Clause, statute must be "retrospective" and "must disadvantage the offender affected by it"); *see also California Dep't of Corrections v. Morales,* 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 1602 n. 3, 131 L.Ed.2d 588 (1995) ("the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' ... but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.").

We believe that the amendment to § 1B1.10(b) does not violate the *Ex Post Facto* Clause. Under the Sentencing Guidelines, *ex post facto* problems usually arise when the Sentencing Guidelines are amended after a defendant commits an offense but before he or she is sentenced. In that context, the sentencing court must apply the version of the Sentencing Guidelines in effect at the time of sentencing unless that version "results in a more severe sentence than that which would have resulted had the Guidelines version in effect at the time of commission of the crime been applied." *United States v. Rodriguez,* 989 F.2d 583, 587 (2d Cir.1993). The relevant inquiry for *ex post facto* analysis is not whether a particular amendment to the Sentencing Guidelines is detrimental to a defendant, but whether application of the later version of the Sentencing Guidelines, considered as a whole, results in a more onerous penalty. *United States v. Keller,* 58 F.3d 884, 890–93 (2d Cir.1995) (noting that "had the changes detrimental to the defendants not more than offset the changes favorable to them, the later version of the guidelines would have been applicable, notwithstanding that one component of the later version would have been less favorable to defendants").

Analogous principles apply to a situation where, as here, an already-sentenced defendant seeks to take advantage of later amendments to the Sentencing Guidelines. Section 1B1.10(b) is triggered only after a defendant seeks a reduction in sentence pursuant to

§ 1B1.10(a). The amendment to § 1B1.10(b) "disadvantages" only those prisoners who seek a benefit under § 1B1.10 and who therefore cannot face a harsher punishment. For example, Berrios was initially sentenced to 210 months in prison. On resentencing, he was sentenced to 168 months. Even assuming, *arguendo,* that the amendment to § 1B1.10(b) "disadvantaged" Berrios by limiting the district court's consideration to only one of the intervening amendments, the amendment he invoked resulted in a net effect favoring him. Accordingly, the *Ex Post Facto* Clause was not violated. *See Keller,* 58 F.3d at 891 (holding that "when positive and negative implications of an amendment result in a net effect favoring defendants, no *ex post facto* problem is present," regardless of whether ameliorative effects and detrimental effects are found in amendments to the same Sentencing Guidelines section or different Sentencing Guidelines sections).

Because we conclude that the amendment to § 1B1.10(b) does not violate the *Ex Post Facto* Clause, Berrios was not deprived of effective assistance of counsel at sentencing.

We therefore affirm.