SLACK *v.* McDANIEL, WARDEN, ET AL.

No. 98–6322.   Argued October 4, 1999—Reargued March 29, 2000—
Decided April 26, 2000

474

476

KENNEDY, J., delivered the opinion of the Court, Part I of which was unanimous, Part II of which was joined by REHNQUIST, C. J., and O'CONNOR, SCALIA, THOMAS, and GINSBURG, JJ., and Parts III and IV of which were joined by REHNQUIST, C. J., and STEVENS, O'CONNOR, SOUTER, GINSBURG, and BREYER, JJ. STEVENS, J., filed an opinion concurring in part and concurring in the judgment, in which SOUTER and BREYER, JJ., joined, *post*, p. 490. SCALIA, J., filed an opinion concurring in part and dissenting in part, in which THOMAS, J., joined, *post*, p. 490.

*Michael Pescetta*, by appointment of the Court, 526 U. S. 1049, argued and reargued the cause for petitioner. With him on the briefs was *Timothy P. O'Toole*.

*Matthew D. Roberts* argued the cause for the United States as *amicus curiae.* With him on the brief were *Solicitor General Waxman, Assistant Attorney General Robinson, Deputy Solicitor General Dreeben,* and *Vicki S. Marani.*

*David F. Sarnowski,* Chief Deputy Attorney General of Nevada, argued and reargued the cause for .respondents. With him on the briefs were *Frankie Sue Del Papa,* Attorney General, and *Julie A. Slabaugh,* Deputy Attorney General. With him on the brief on the original argument was Ms. Del Papa.*

JUSTICE KENNEDY delivered the opinion of the Court.‘

We are called upon to resolve a series of issues regarding the law of habeas corpus, including questions of the proper application of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). We hold as follows:

---

*Briefs of *amici curiae* urging reversal were filed for the National Association of Criminal Defense Lawyers et al. by *Edward M. Chikofsky, Barbara E. Bergman,* and *David M. Porter;* and for the Rutherford Institute by *John W. Whitehead.*

Briefs of *amici curiae* urging affirmance were filed for the State of California et al. by *Bill Lockyer,* Attorney General of California, *David P. Druliner,* Chief Assistant Attorney General, *Carol Wendelin Pollack,* Senior Assistant Attorney General, and *Donald E. De Nicola* and *A. Scott Hayward,* Deputy Attorneys General, joined by the Attorneys General for their respective States as follows: *Bill Pryor* of Alabama, *Bruce M. Botelho* of Alaska, *Janet Napolitano* of Arizona, *Mark Pryor* of Arkansas, *M. Jane Brady* of Delaware, *Robert A. Butterworth* of Florida, *Thomas J. Miller* of Iowa, *Alan G. Lance* of Idaho, *Carla J. Stovall* of Kansas, *Richard P. Ieyoub* of Louisiana, *Mike Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Patricia A. Madrid* of New Mexico, *Michael F. Easley* of North Carolina, *W. A. Drew Edmondson* of Oklahoma, *D. Michael Fisher* of Pennsylvania, *Charles M. Condon* of South Carolina, *Mark Barnett* of South Dakota, *Paul G. Summers* of Tennessee, *Mark L. Earley* of Virginia, and *Christine O. Gregoire* of Washington; and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger.*

First, when a habeas corpus petitioner seeks to initiate an appeal of the dismissal of a habeas corpus petition after April 24, 1996 (the effective date of AEDPA), the right to appeal is governed by the certificate of appealability (COA) requirements now found at 28 U. S. C. § 2253(c) (1994 ed., Supp. III). This is true whether the habeas corpus petition was filed in the district court before or after AEDPA's effective date.

Second, when the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue (and an appeal of the district court's order may be taken) if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Third, a habeas petition which is filed after an initial petition was dismissed without adjudication on the merits for failure to exhaust state remedies is not a "second or successive" petition as that term is understood in the habeas corpus context. Federal courts do, however, retain broad powers to prevent duplicative or unnecessary litigation.

I

Petitioner Antonio Slack was convicted of second-degree murder in Nevada state court in 1990. His direct appeal was unsuccessful. On November 27, 1991, Slack filed a petition for writ of habeas corpus in federal court under 28 U. S. C. § 2254. Early in the federal proceeding, Slack decided to litigate claims he had not yet presented to the Nevada courts. He could not raise the claims in federal court because, under the exhaustion of remedies rule explained in *Rose* v. *Lundy*, 455 U. S. 509 (1982), a federal court was required to dismiss a petition presenting claims not yet liti-

gated in state court. Accordingly, Slack filed a motion seeking to hold his federal petition in abeyance while he returned to state court to exhaust the new claims. Without objection by the State, the District Court ordered the habeas petition dismissed "without prejudice." The order, dated February 19, 1992, further stated, "Petitioner is granted leave to file an application to renew upon exhaustion of all State remedies." *Slack* v. *Director, Nev. Dept. of Prisons,* No. CV–N–91–561 (D. Nev.), App. 22.

After an unsuccessful round of state postconviction proceedings, Slack filed a new federal habeas petition on May 30, 1995. The District Court later appointed counsel, directing him to file an amended petition or a notice of intention to proceed with the current petition. On December 24, 1997, counsel filed an amended petition presenting 14 claims for relief. The State moved to dismiss the petition. As its first ground, the State argued that Slack's petition must be dismissed because it was a mixed petition, that is to say a petition raising some claims which had been presented to the state courts and some which had not. As its second ground, the State cited *Farmer* v. *McDaniel,* 98 F. 3d 1548 (CA9 1996), and contended that, under the established rule in the Ninth Circuit, claims Slack had not raised in his 1991 federal habeas petition must be dismissed as an abuse of the writ.

The District Court granted the State's motion. First, the court relied on *Farmer* to hold that Slack's 1995 petition was "[a] second or successive petition," even though his 1991 petition had been dismissed without prejudice for a failure to exhaust state remedies. The court then invoked the abuse of the writ doctrine to dismiss with prejudice the claims Slack had not raised in the 1991 petition. This left Slack with four claims, each having been raised in the 1991 petition; but one of these, the court concluded, had not yet been presented to the state courts. The court therefore dismissed Slack's remaining claims because they were in a

mixed petition. Here, Slack seeks to challenge the dismissal of claims as abusive; he does not contend that all claims presented in the amended petition were exhausted.

The District Court's dismissal order was filed March 30, 1998. On April 29, 1998, Slack filed in the District Court a pleading captioned "Notice of Appeal." Consistent with Circuit practice, the court treated the notice as an application for a certificate of probable cause (CPC) under the pre-AEDPA version of 28 U. S. C. § 2253; and it denied a CPC, concluding the appeal would raise no substantial issue. The Court of Appeals likewise denied a CPC. No. CV–95–194 (CA9, July 7, 1998), App. 197. As a result, Slack was not permitted to take an appeal of the order dismissing his petition. We granted certiorari. 525 U. S. 1138 (1999). Slack contends that he is entitled to an appeal of the dismissal of his petition, arguing that the District Court was wrong to hold that his 1995 petition was "second or successive." We agree that Slack's 1995 petition was not second or successive, but first we must resolve two preliminary questions.

## II

Before AEDPA, appellate review of the dismissal of a habeas petition was governed by a version of 28 U. S. C. § 2253 enacted in 1948. Act of June 25, 1948, 62 Stat. 967. The statute provided no appeal could be taken from the final order in a habeas corpus proceeding "unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause." *Ibid.* The statute did not explain the standards for the issuance of a CPC, but the Court established what a prisoner must show to obtain a CPC in *Barefoot* v. *Estelle,* 463 U. S. 880 (1983): "a substantial showing of the denial of a federal right." *Id.,* at 893 (citation and brackets omitted).

Effective April 24, 1996, AEDPA amended § 2253. As relevant here, AEDPA added subsection (c), which provides:

"(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

"(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

"(B) the final order in a proceeding under section 2255.

"(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

"(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2)." 28 U. S. C. § 2253(c) (1994 ed., Supp. III).

The issue we consider at the outset is whether the pre- or post-AEDPA version of § 2253 controls Slack's right to appeal. In *Lindh* v. *Murphy,* 521 U. S. 320 (1997), the Court held that AEDPA's amendments to 28 U. S. C. § 2254, the statute governing entitlement to habeas relief in the district court, applied to cases filed after AEDPA's effective date. 521 U. S., at 327. Slack contends that *Lindh* means § 2253(c) does not apply to him because his case was commenced in the District Court pre-AEDPA. That position is incorrect. For purposes of implementing the holding in *Lindh,* it must be recognized that § 2254 is directed to proceedings in the district courts while § 2253 is directed to proceedings in the appellate courts. Just as § 2254 applies to cases filed in the trial court post-AEDPA, § 2253 applies to appellate proceedings initiated post-AEDPA. True, *Lindh* requires a court of appeals to apply pre-AEDPA law in reviewing the trial court's ruling, for cases commenced there pre-AEDPA; but post-AEDPA law governs the right to appeal in cases such as the one now before us.

While an appeal is a continuation of the litigation started in the trial court, it is a distinct step. *Hohn* v. *United*

*States,* 524 U. S. 236, 241 (1998); *Mackenzie* v. *A. Engel-hard & Sons Co.,* 266 U. S. 131 (1924). We have described proceedings in the courts of appeals as "appellate cases." *E. g.,* Order of Apr. 30, 1991, 500 U. S. 1009 (amendments to Federal Rules of Appellate Procedure "shall govern all proceedings in appellate cases thereafter commenced"). Under AEDPA, an appellate case is commenced when the application for a COA is filed. *Hohn, supra,* at 241. When Congress instructs us (as *Lindh* says it has) that application of a statute is triggered by the commencement of a case, the relevant case for a statute directed to appeals is the one initiated in the appellate court. Thus, § 2253(c) governs appellate court proceedings filed after AEDPA's effective date. We see no indication that Congress intended to tie application of the provisions to the date a petition was filed in the district court. The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal. *Hohn, supra,* at 248; cf. *Lindh, supra,* at 327. Because Slack sought appellate review two years after AEDPA's effective date, § 2253(c) governs his right to appeal.

We further note that we applied § 2253 in our post-*Lindh* decision in *Hohn,* a case which arrived in the same posture as this case. Like Slack, Hohn argued § 2253(c) did not apply because his petition had been filed in the District Court before AEDPA's effective date. Brief for Petitioner in *Hohn* v. *United States,* O. T. 1997, No. 96–8986, pp. 40–44. Though our opinion did not discuss whether § 2253(c) applied to Hohn, we would have had no reason to reach the issue we did resolve, that we had statutory certiorari jurisdiction to review the denial of a COA, if AEDPA did not apply at all. Our disposition today is consistent with *Hohn.* AEDPA governs the conditions of Slack's appeal, and so he was required to seek a COA to obtain appellate review of the dismissal of his habeas petition.

## III

As AEDPA applied, the Court of Appeals should have treated the notice of appeal as an application for a COA. Fed. Rule App. Proc. 22(b); Fed. Rule Civ. Proc. 8(f); see also *Hohn, supra,* at 240. To evaluate whether the Court of Appeals should have granted a COA, we must determine what the habeas applicant must show to satisfy the requirements of § 2253(c).

Citing § 2253(c)'s requirement that a COA may issue only upon the "substantial showing of the denial of a constitutional right," the State contends that no appeal can be taken if the District Court relies on procedural grounds to dismiss the petition. According to the State, only constitutional rulings may be appealed. Under this view, a state prisoner who can demonstrate he was convicted in violation of the Constitution and who can demonstrate that the district court was wrong to dismiss the petition on procedural grounds would be denied relief. We reject this interpretation. The writ of habeas corpus plays a vital role in protecting constitutional rights. In setting forth the preconditions for issuance of a COA under § 2253(c), Congress expressed no intention to allow trial court procedural error to bar vindication of substantial constitutional rights on appeal.

Our conclusion follows from AEDPA's present provisions, which incorporate earlier habeas corpus principles. Under AEDPA, a COA may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S. C. § 2253(c) (1994 ed., Supp. III). Except for substituting the word "constitutional" for the word "federal," § 2253 is a codification of the CPC standard announced in *Barefoot* v. *Estelle,* 463 U. S., at 894. Congress had before it the meaning *Barefoot* had given to the words it selected; and we give the language found in § 2253(c) the meaning ascribed it in *Barefoot,* with due note for the substitution of the word "constitutional." See *Williams* v. *Taylor, ante,* at 434. To obtain a COA under § 2253(c), a habeas prisoner

must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot,* includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were " 'adequate to deserve encouragement to proceed further.' " *Barefoot, supra,* at 893, and n. 4 ("sum[ming] up" the " 'substantial showing' " standard).

Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. This construction gives meaning to Congress' requirement that a prisoner demonstrate substantial underlying constitutional claims and is in conformity with the meaning of the "substantial showing" standard provided in *Barefoot, supra,* at 893, and n. 4, and adopted by Congress in AEDPA. Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.

Determining whether a COA should issue where the petition was dismissed on procedural grounds has two compo-

nents, one directed at the underlying constitutional claims and one directed at the district court's procedural holding. Section 2253 mandates that both showings be made before the court of appeals may entertain the appeal. Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments. The recognition that the "Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of," *Ashwander* v. *TVA*, 297 U. S. 288, 347 (1936) (Brandeis, J., concurring), allows and encourages the court to first resolve procedural issues. The *Ashwander* rule should inform the court's discretion in this regard.

In this case, Slack did not attempt to make a substantial showing of the denial of a constitutional right, instead arguing only that the District Court's procedural rulings were wrong. We will not attempt to determine whether Slack could make the required showing of constitutional error, for the issue was neither briefed nor presented below because of the view that the CPC, rather than COA, standards applied. It will be necessary to consider the matter upon any remand for further proceedings. We will, however, address the second component of the § 2253(c) inquiry, whether jurists of reason could conclude that the District Court's dismissal on procedural grounds was debatable or incorrect. The issue has been discussed in the briefs presented to us; it is the question upon which we granted certiorari; and its resolution would end the case, were we to decide the matter in the State's favor.

The District Court dismissed claims Slack failed to raise in his 1991 petition based on its conclusion that Slack's 1995 petition was a second or successive habeas petition. This conclusion was wrong. A habeas petition filed in the district

court after an initial habeas petition was unadjudicated on its merits and dismissed for failure to exhaust state remedies is not a second or successive petition.

Slack commenced this habeas proceeding in the District Court in 1995, before AEDPA's effective date. Because the question whether Slack's petition was second or successive implicates his right to relief in the trial court, pre-AEDPA law governs, see *Lindh* v. *Murphy*, 521 U. S. 320 (1997), though we do not suggest the definition of second or successive would be different under AEDPA. See *Stewart* v. *Martinez-Villareal*, 523 U. S. 637 (1998) (using pre-AEDPA law to interpret AEDPA's provision governing "second or successive habeas applications"). The parties point us to Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts as controlling the issue. The Rule incorporates our prior decisions regarding successive petitions and abuse of the writ, *McCleskey* v. *Zant*, 499 U. S. 467, 487 (1991), and states: "A second or successive petition [alleging new and different grounds] may be dismissed if . . . the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." As the text demonstrates, Rule 9(b) applies only to "a second or successive petition."

The phrase "second or successive petition" is a term of art given substance in our prior habeas corpus cases. The Court's decision in *Rose* v. *Lundy*, 455 U. S., at 510, instructs us in reaching our understanding of the term. *Rose* v. *Lundy* held that a federal district court must dismiss habeas corpus petitions containing both exhausted and unexhausted claims. The opinion, however, contemplated that the prisoner could return to federal court after the requisite exhaustion. *Id.*, at 520 ("Those prisoners who . . . submit mixed petitions nevertheless are entitled to resubmit a petition with only exhausted claims or to exhaust the remainder of their claims"). It was only if a prisoner declined to return to state court and decided to proceed with his exhausted

claims in federal court that the possibility arose that a subsequent petition would be considered second or successive and subject to dismissal as an abuse of the writ. *Id.,* at 520–521 (plurality opinion) ("[A] prisoner who decides to proceed only with his exhausted claims and deliberately sets aside his unexhausted claims risks dismissal of subsequent federal petitions").

This understanding of the second or successive rule was confirmed two Terms ago when we wrote as follows: "[N]one of our cases . . . have ever suggested that a prisoner whose habeas petition was dismissed for failure to exhaust state remedies, and who then did exhaust those remedies and returned to federal court, was by such action filing a successive petition. A court where such a petition was filed could adjudicate these claims under the same standard as would govern those made in any other first petition." *Stewart* v. *Martinez-Villareal, supra,* at 644. We adhere to this analysis. A petition filed after a mixed petition has been dismissed under *Rose* v. *Lundy* before the district court adjudicated any claims is to be treated as "any other first petition" and is not a second or successive petition.

The State contends that the prisoner, upon his return to federal court, should be restricted to the claims made in his initial petition. Neither *Rose* v. *Lundy* nor *Martinez-Villareal* requires this result, which would limit a prisoner to claims made in a pleading that is often uncounseled, handwritten, and pending in federal court only until the State identifies one unexhausted claim. The proposed rule would bar the prisoner from raising nonfrivolous claims developed in the subsequent state exhaustion proceedings contemplated by the *Rose* dismissal, even though a federal court had yet to review a single constitutional claim. This result would be contrary to our admonition that the complete exhaustion rule is not to "trap the unwary *pro se* prisoner." *Rose supra,* at 520 (internal quotation marks omitted). It is instead more appropriate to treat the initial mixed petition

as though it had not been filed, subject to whatever conditions the court attaches to the dismissal. *Rose* v. *Lundy* dictated that, whatever particular claims the petition contained, none could be considered by the federal court.

Slack's 1991 petition was dismissed under the procedure established in *Rose* v. *Lundy*. No claim made in Slack's 1991 petition was adjudicated during the three months it was pending in federal court. As such, the 1995 petition should not have been dismissed on the grounds that it was second or successive. Reasoning to the contrary found in the Court of Appeals' *Farmer* decision, rendered before *Martinez-Villareal*, is incorrect. See also *In re Turner*, 101 F. 3d 1323 (CA9 1997) (refusing to apply rules governing second or successive petitions to a petitioner whose prior habeas petition had been dismissed for failure to exhaust). Our view that established practice demonstrates that Slack's 1995 petition is not second or successive is confirmed as well by opinions of the Courts of Appeals which have addressed the point under similar circumstances. *E. g., Carlson* v. *Pitcher*, 137 F. 3d 416, 420 (CA6 1998) ("We join with every other court to consider the question, and hold that a *habeas* petition filed after a previous petition has been dismissed on exhaustion grounds is not a 'second or successive' petition"); *Turner, supra; Christy* v. *Horn*, 115 F. 3d 201, 208 (CA3 1997); *Dickinson* v. *Maine*, 101 F. 3d 791 (CA1 1996); *Camarano* v. *Irvin*, 98 F. 3d 44, 45–46 (CA2 1996).

The State complains that this rule is unfair. The filing of a mixed petition in federal court requires it to appear and to plead failure to exhaust. The petition is then dismissed without prejudice, allowing the prisoner to make a return trip through the state courts to exhaust new claims. The State expresses concern that, upon exhaustion, the prisoner would return to federal court but again file a mixed petition, causing the process to repeat itself. In this manner, the State contends, a vexatious litigant could inject undue delay into the collateral review process. To the extent the tactic

would become a problem, however, it can be countered without upsetting the established meaning of a second or successive petition.

First, the State remains free to impose proper procedural bars to restrict repeated returns to state court for postconviction proceedings. Second, provisions of AEDPA may bear upon the question in cases to which the Act applies. AEDPA itself demonstrates that Congress may address matters relating to exhaustion and mixed petitions through means other than rules governing "second or successive" petitions. *E. g.*, 28 U. S. C. § 2254(b)(2) (1994 ed., Supp. III). Third, the Federal Rules of Civil Procedure, applicable as a general matter to habeas cases, vest the federal courts with due flexibility to prevent vexatious litigation. As Slack concedes, in the habeas corpus context it would be appropriate for an order dismissing a mixed petition to instruct an applicant that upon his return to federal court he is to bring only exhausted claims. See Fed. Rules Civ. Proc. 41(a) and (b). Once the petitioner is made aware of the exhaustion requirement, no reason exists for him not to exhaust all potential claims before returning to federal court. The failure to comply with an order of the court is grounds for dismissal with prejudice. Fed. Rule Civ. Proc. 41(b). In this case, however, the initial petition was dismissed without condition and without prejudice. We reject the State's argument that refusing to give a new meaning to the established term "second or successive" opens the door to the abuses described.

## IV

Slack has demonstrated that reasonable jurists could conclude that the District Court's abuse of the writ holding was wrong, for we have determined that a habeas petition filed after an initial petition was dismissed under *Rose* v. *Lundy* without an adjudication on the merits is not a "second or successive" petition. Whether Slack is otherwise entitled to the issuance of a COA is a question to be resolved first upon

remand. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE SOUTER and JUSTICE BREYER join, concurring in part and concurring in the judgment.

With respect to the issue resolved in Part II of the Court's opinion, I agree with the Courts of Appeals that have held that the pre-AEDPA version of 28 U. S. C. §2253 governs the right to appeal with respect to an appeal noticed after the effective date of AEDPA in a habeas corpus proceeding commenced prior to that date. See *Fuller* v. *Roe*, 182 F. 3d 699, 702 (CA9 1999) *(per curiam); Crowell* v. *Walsh*, 151 F. 3d 1050, 1051–1052 (CADC 1998); *Tejeda* v. *Dubois*, 142 F. 3d 18, 22, n. 4 (CA1 1998); *Berrios* v. *United States,* 126 F. 3d 430, 431, n. 2 (CA2 1997); *United States* v. *Kunzman,* 125 F. 3d 1363, 1364, n. 2 (CA10 1997); *United States* v. *Skandier,* 125 F. 3d 178, 179–182 (CA3 1997); *Hardwick* v. *Singletary,* 122 F. 3d 935, 936 *(per curiam)*, vacated in part on other grounds, 126 F. 3d 1312 (CA11 1997) *(per curiam); Arredondo* v. *United States*, 120 F. 3d 639, 640 (CA6 1997); *United States* v. *Carter*, 117 F. 3d 262, 264 (CA5 1997) *(per curiam);* but see *Tiedeman* v. *Benson*, 122 F. 3d 518, 520–521 (CA8 1997).

I do, however, join the balance of the Court's opinion and its judgment.

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, concurring in part and dissenting in part.

I join the opinion of the Court, except for its discussion in Parts III and IV of whether Slack's postexhaustion petition was second or successive. I believe that the Court produces here, as it produced in a different respect in *Stewart* v. *Martinez-Villareal*, 523 U. S. 637 (1998), see *id.,* at 646

(SCALIA, J., dissenting), a distortion of the natural meaning of the term "second or successive."

The opinion relies on *Martinez-Villareal*, together with *Rose* v. *Lundy*, 455 U. S. 509 (1982), to conclude that a prisoner whose federal petition is dismissed to allow exhaustion may return to federal court without having his later petition treated as second or successive, regardless of what claims it contains. Neither the holdings nor even the language of those opinions suggest that proposition. As for holdings: *Martinez-Villareal* did not even involve the issue of exhaustion, and so has no bearing upon the present case. The narrow holding of *Rose* v. *Lundy* was that a habeas petition containing both exhausted and unexhausted claims must be dismissed, but it can be fairly said to have embraced the proposition that the petitioner could return with the same claims after they all had been exhausted. This latter proposition could be thought to rest upon the theory that a petition dismissed for lack of exhaustion is a petition that never existed, so that *any other later petition* would not be second or successive. Or it could be thought to rest upon the theory that the later refiling of the original claims, all of them now exhausted, is just a renewal of the first petition, implicitly authorized by the dismissal to permit exhaustion. The former theory is counterfactual; the latter is quite plausible.

The language the Court quotes from *Rose* and *Martinez-Villareal* also does not justify the Court's mixed-petitions-don't-count theory. The quotation from *Rose* says only that " 'prisoners who . . . submit mixed petitions . . . are entitled to . . . exhaust the *remainder of their claims*.' " *Ante*, at 486 (quoting *Rose, supra*, at 520 (emphasis added)). This does not suggest that they are entitled to add new claims, or to return, once again, without accomplishing the exhaustion that the court dismissed the petition to allow. And the quotation from *Martinez-Villareal* indicates only that when a prisoner whose habeas petition was dismissed for failure to exhaust state remedies " 'then did exhaust those reme-

dies' " and refile in federal court, the court " 'could adjudicate *these claims* under the same standard as would govern those made in any other first petition.'" *Ante*, at 487 (quoting *Martinez-Villareal*, 523 U. S., at 644 (emphasis added)). This does not require treating the later filed petition as a "first" petition regardless of whether it bears any resemblance to the petition initially filed. In fact, *Martinez-Villareal* clearly recognized the potential significance of raising a new claim rather than merely renewing an old one: It held that a petition raising a claim of incompetence to be executed previously dismissed as premature was not second or successive, but expressly distinguished, and left open, the situation where the claim had not been raised in the earlier petition. See *id.*, at 645, n.

The State understandably fears the consequences of the Court's approach, which would allow federal petitions to be repeatedly filed and dismissed for lack of exhaustion, requiring the State repeatedly to appear and expend its resources, with no help in sight from supposed limitations on "second or successive" petitions. The Court reassuringly observes that this problem can be countered in other ways, without "upsetting the established meaning of a second or successive petition." *Ante*, at 489. But as discussed above, it is not "established" that a first petition ceases to be a first petition when it is dismissed to permit exhaustion. And though the problem of repetitive filings after dismissals for lack of exhaustion can of course be countered in other ways, so can the problem of repetitive filings for all other reasons. It happens to be the whole *purpose* of the "second or successive" provision to solve *precisely that problem*—directly checking the "vexatious litigant," *ante*, at 488, rather than hoping that the courts will use a patchwork of other provisions to achieve the same end. I do not disagree with the Court that district courts may be able to limit repeated filings through appropriate orders pursuant to Federal Rules of Civil Procedure 41(a) and (b). This burden on district courts would not be

necessary, however—and the States would not be remanded to reliance upon the discretion of district judges—if the limitation on "second or successive" petitions were given its natural meaning.

Because I believe petitioner's inclusion of new and unexhausted claims in his postexhaustion petition rendered it second or successive, he is not entitled to a certificate of appealability, and I would affirm the decision of the Court of Appeals.