John W. PEOPLES, Jr., Petitioner-Appellant,

v.

Michael W. HALEY, Commissioner of the Alabama Department of Corrections, Attorney General of the State of Alabama, Respondents-Appellees,

No. 98-6882.

United States Court of Appeals,

Eleventh Circuit.

Sept. 18, 2000.

Appeal from the United States District Court for the Northern District of Alabama.(No. 94-02175-CV-B-E), Sharon Lovelace Blackburn, Judge.

Before ANDERSON, Chief Judge, and TJOFLAT and MARCUS, Circuit Judges.

PER CURIAM:

We vacate and withdraw the previous opinion in this case, dated September 7, 2000, and substitute the following opinion.

I.

On December 7, 1983, John W. Peoples, Jr. was convicted of capital murder and sentenced to death for the murders of Paul Franklin, Sr., his wife Judy Franklin, and their ten-year-old son, Paul Franklin, Jr. His convictions and death sentences were affirmed on direct appeal. *See Peoples v. State,* 510 So.2d 554 (Ala.Crim.App.1986); *Ex Parte Peoples,* 510 So.2d 574 (Ala.1987). After Peoples unsuccessfully sought collateral review in state court, he petitioned the United States District Court for the Northern District of Alabama for a writ of habeas corpus on September 6, 1994. His petition, as subsequently amended, contained twenty-six claims, which we set out in the margin.[1]

---

[1]Reduced to their essence, the twenty-six claims were: (1) Peoples was medicated throughout the course of preindictment, pretrial, and trial proceedings and not fully able to assist counsel in his defense of capital murder charges in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments; (2) Peoples was denied constitutionally guaranteed effective assistance of counsel, prior to indictment, leading to his own production of virtually all evidence later admitted against him at trial in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments; (3) the State offered no evidence that Paul Franklin, Sr. was murdered, and Peoples' three capital murder convictions relating to Paul Franklin, Sr.'s death stand in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments; (4) evidence and extra record information and displays concerning the Franklin family subverted Peoples' fundamental rights to due process and a fair trial in contravention of the Fifth, Sixth, Eighth, and Fourteenth Amendments; (5) Peoples' convictions cannot withstand constitutional muster because they are based on the admittedly perjurious testimony of his co-defendant and alleged accomplice, Timothy Gooden; (6) the district attorney's abusive conduct was pervasive and worked to effect a fundamentally unfair trial in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments; (7) Peoples was denied constitutionally guaranteed

In an order signed on September 30, 1998, the district court, finding many of Peoples' claims either procedurally barred or without merit, denied Peoples' petition without an evidentiary hearing. On October 28, 1998, relying on the version of 28 U.S.C. § 2253 in place before the effective date of the Antiterrorism

---

effective assistance of counsel at trial, on appeal, and in post-conviction proceedings in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments; (8) the trial court's repeated failure to grant Peoples a change of venue violated his constitutional rights to a fair trial, an impartial jury, and a sentencing hearing free from bias and prejudice; (9) Peoples' right to a fair trial by an impartial jury was violated by the trial court's unconstitutional restrictions on the voir dire examinations of prospective jurors in contravention of the Fifth, Sixth, Eighth, and Fourteenth Amendments; (10) the district attorney's racially biased use of peremptory strikes to exclude black persons from Peoples' jury was a gross violation of his Eighth and Fourteenth Amendment rights; (11) the trial court committed constitutional error in denying Peoples' motion for a mistrial, or in the alternative, for continuance of jury selection, after the district attorney commented during voir dire on the ramifications of defendant's potential failure to testify; (12) the trial court's refusal to challenge for cause prospective juror Jimmy Chastain, a reserve Talladega County deputy sheriff who investigated the crime, denied Peoples a fair trial and a reliable sentencing procedure guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments; (13) Peoples was illegally arrested in the early afternoon of July 11, 1983, outside Wesson's Pharmacy in Childersburg, Talladega County, Alabama, and all the evidence subsequently obtained as the fruits of that unlawful arrest must be suppressed as violations of his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights; (14) the bill of sale and tag receipt for a Corvette, obtained from Peoples as a result of his custodial interrogation by Childersburg Police Chief Ira Finn without any warning or waiver of his constitutional rights under *Miranda,* violated Peoples' Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights; (15) the identification of Timothy Gooden, obtained from Peoples as a result of the custodial interrogation by Childersburg Police Chief Ira Finn without any warning or waiver of his constitutional rights under *Miranda,* violated Peoples' rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments; (16) the car, papers, clothing, and boots, obtained from Peoples as a result of his custodial interrogation by Childersburg Police Chief Ira Finn without any warning or waiver of his constitutional rights under *Miranda,* violated Peoples' Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights; (17) the trial court committed error of constitutional dimension, having erroneously refused to grant the motion to suppress, by admitting into evidence all evidence obtained from the crime scene to which Peoples had directed law enforcement authorities, in violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments; (18) Peoples' rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments were violated by the admission into evidence at trial of his illegally obtained statement on July 19, 1983; (19) Peoples' rights under the Sixth, Eighth, and Fourteenth Amendments were violated by the admission into evidence at trial of his illegally obtained statement regarding the location of the purported murder weapon on July 22, 1983; (20) the State's conduct in seizing a tape recorder belonging to defense counsel's investigator, which had previously been provided to Peoples for use in preparing his defense and communicating with counsel, violated Peoples' Sixth Amendment right to counsel and Fifth and Fourteenth Amendment rights to due process, and requires dismissal of the indictment; (21) the trial court's refusal to quash the prosecution's subpoena of defense counsel's investigative assistant for the entire duration of the trial intruded on Peoples' Sixth Amendment right to counsel and deprived him of his Fifth and Fourteenth Amendment rights to due process; (22) the trial court acted improperly and committed reversible error of constitutional dimension by admitting, without any witnesses and opportunity for constitutionally mandated confrontation, a ten-year-old, unauthenticated hospital record to connect one victim to the purported murder weapon, in violation of Peoples' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments; (23) the trial court's instruction on the defendant's failure to testify, which left the impression that an adverse inference could be drawn, violated Peoples' constitutional rights to a fair trial and due process; (24) the trial court erred in allowing the prosecutor to question defense witnesses at the sentencing hearing about a pending felony charge and some worthless check allegations, in violation of Peoples' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments; (25) the trial court's finding of aggravating circumstances violated Peoples' rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments; and (26) the jury's sequestration and its deliberations were unconstitutionally tainted.

and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) (the "AEDPA"), Peoples filed an application for a certificate of probable cause ("CPC") and a notice of appeal in the district court. On November 16, 1998, the district court granted Peoples a CPC. In doing so, the court observed:

> Under the AEDPA, a habeas petitioner appealing the denial of his petition must obtain a "certificate of appealability" in order to proceed with an appeal. Because Peoples filed his petition for a writ of habeas corpus in this court on September 6, 1994, prior to the April 24, 1996 effective date of the AEDPA, he is correct in seeking a certificate of probable cause rather than a certificate of appealability. *See Hardwick v. Singletary,* 126 F.3d 1312, 1313 (11th Cir.1997) (recognizing that *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997), effectively "abrogates and supplants" that portion of *Hunter v. United States,* 101 F.3d 1565 (11th Cir.1996), governing certificates of appealability in cases pending on the effective date of the AEDPA). As a practical matter, however, the Eleventh Circuit has concluded that the standard governing certificates of probable cause under pre-AEDPA law and certificates of appealability under the AEDPA "is materially identical." *Hardwick,* 126 F.3d at 1313 (adopting the Fifth Circuit's conclusion in *Green v. Johnson,* 116 F.3d 1115, 1120 (5th Cir.1997), that the AEDPA was intended to codify the standard established in *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)).
>
> The standard, which petitioner must satisfy to obtain appellate review of the decision of this court's disposition of his petition for a writ of habeas corpus, requires a "substantial showing of a denial of [a] federal right." *Barefoot v. Estelle,* 463 U.S. at 893, 103 S.Ct. 3383. Furthermore, the United States Supreme Court has recognized that the nature of the penalty—in this case, death—is a "proper consideration in determining whether to issue a certificate of probable cause." *Id.*

II.

Before April 24, 1996, the effective date of the AEDPA, a habeas petitioner who had been denied relief had to obtain a CPC from the district court in order to prosecute an appeal. *See Tompkins v. Moore,* 193 F.3d 1327, 1330 (11th Cir.1999); 28 U.S.C. § 2253 (1994). In issuing a CPC, a district court did not have to enumerate those issues for which a petitioner had made a "substantial showing of the denial of [a] federal right." *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983) (quoting *Stewart v. Beto,* 454 F.2d 268, 270 n. 2 (5th Cir.1971), *overruled in part on other grounds by Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)).

The AEDPA amended 28 U.S.C. § 2253 to require a petitioner to request a certificate of appealability ("COA") instead of a CPC, *see Henry v. Department of Corrections,* 197 F.3d 1361, 1364-66 (11th Cir.1999) (describing statutory history), and established a statutory standard, set out in section 2253(c)(2), for the issuance of a COA. *See* 28 U.S.C. § 2253(c)(2) (Supp. IV 1999). Unlike the procedure for the issuance of a CPC, under the amended version of section 2253, the district court, when granting a COA, must "indicate [for] which specific issue or issues" the petitioner has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2), (3).

Following the Supreme Court's decision in *Lindh,* 521 U.S. at 336, 117 S.Ct. at 2068 (holding that

the Chapter 153 amendments, which apply to all federal habeas petitions, are inapplicable to federal habeas petitions pending on the date of the AEDPA's enactment), the lower federal courts concluded that the pre-AEDPA procedure for obtaining a CPC applied if the petitioner's habeas petition and notice of appeal from the district court's denial of that petition were filed in the district court before April 24, 1996, the AEDPA's effective date. *See generally Mincey v. Head,* 206 F.3d 1106, 1130 & n. 58 (11th Cir.2000). Neither *Lindh* nor the lower court decisions that followed, however, clearly answered the question whether the AEDPA required an unsuccessful habeas petitioner to obtain a COA from the district court in order to appeal the denial of relief if the notice of appeal was filed after the effective date of the AEDPA.[2] *Compare Tiedeman v. Benson,* 122 F.3d 518, 520-21 (8th Cir.1997) (holding that COA is required in cases in which the notice of appeal is filed after the effective date of the AEDPA, even though the habeas petition was originally filed in the district court before that date), *with Fuller v. Roe,* 182 F.3d 699, 702 (9th Cir.1999) (joining the majority of circuit courts in holding "that §§ 2254 and 2255 petitioners who filed their petitions in district court prior to AEDPA's effective date, regardless of whether they filed their notice of appeal before or after AEDPA's [effective date], do not need a certificate of appealability to proceed with their appeal") (quoting *United States v. Kunzman,* 125 F.3d 1363, 1364 n. 2 (10th Cir.1997)); *Crowell v. Walsh,* 151 F.3d 1050, 1052 (D.C.Cir.1998) (same); *Tejeda v. Dubois,* 142 F.3d 18, 21-22 & n. 4 (1st Cir.1998) (same); *Berrios v. United States,* 126 F.3d 430, 431 n. 2 (2d Cir.1997) (same); *United States v. Skandier,* 125 F.3d 178, 179-82 (3rd Cir.1997) (same); *Hardwick v. Singletary,* 122 F.3d 935, 936 (11th Cir.) (per curiam), *modified on reh'g per curiam,* 126 F.3d 1312, 1313 (11th Cir.1997)(same); *Arredondo v. United States,* 120 F.3d 639, 640 (6th Cir.1997) (same); *United States v. Carter,* 117 F.3d 262, 264 (5th Cir.1997) (same).

Earlier this year, the Supreme Court, in *Slack v. McDaniel,* --- U.S. ----, 120 S.Ct. 1595, 146 L.Ed.2d

---

[2]The law in this circuit has been confused by the Supreme Court's decisions in *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and *Slack v. McDaniel,* --- U.S. ----, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Our first interpretation of COA requirements under the AEDPA, in *Hunter v. United States,* 101 F.3d 1565, 1567 (11th Cir.1996) (en banc), held that a district court was authorized to issue a COA and that the AEDPA's amendments requiring a COA applied to "all 28 U.S.C. § 2254 cases in which no [CPC] was obtained under preexisting law before the [AEDPA's] effective date ..., and to all 28 U.S.C. § 2255 cases in which no notice of appeal was filed before that effective date." After *Lindh* was handed down, we interpreted *Lindh* as overruling *Hunter* to the extent that *Hunter* required a COA for cases in which no notice of appeal had been filed before the AEDPA's effective date. *See Hardwick v. Singletary,* 122 F.3d 935, 936 (11th Cir.) (per curiam), *modified on reh'g per curiam,* 126 F.3d 1312, 1313 (11th Cir.1997). The Supreme Court's recent decision in *Slack* clarified the issue, as explained in the text infra. It is now clear that *Hunter* was correctly decided in the first place, and that *Hardwick* 's statements interpreting *Lindh* as overruling part of *Hunter* were incorrect. Thus, we now recognize that *Slack* effectively overrules *Hardwick* and reinstates *Hunter* as the law of this circuit.

542 (2000), answered the question, holding that, in a section 2254 or 2255 proceeding,

> when a habeas corpus petitioner seeks to initiate an appeal of the dismissal of a habeas corpus petition after April 24, 1996 (the effective date of the AEDPA), the right to appeal is governed by the certificate of appealability (COA) requirements now found at 28 U.S.C. § 2253(c) (1994 ed., Supp. III). This is true whether the habeas corpus petition was filed in the district court before or after AEDPA's effective date.

*Slack,* 120 S.Ct. at 1600.[3] Pursuant to *Slack,* it is now clear that there should have been a COA in this case rather than a CPC, which raises the question whether this court should itself apply the COA standards or remand for the district court to do so.

As we held in *Franklin v. Hightower,* 215 F.3d 1196 (11th Cir.2000) (per curiam):

> [T]he grant of a CPC rather than a COA ... is not fatal to the appeal. By applying AEDPA's standards to this appeal and issuing a proper COA (if warranted), this panel may "fix" the inadequacies of the present CPC.... And the Court in *Slack* remanded the case in part for the court of appeals to apply the appropriate standard, thus implying that defective leave to appeal neither dooms the appeal nor deprives the appellate courts of jurisdiction. *See Slack,* 120 S.Ct. at 1607.

*Id.* at 1199. In other words, in this situation, it is within the discretion of the court of appeals whether to apply the COA standards itself, or remand to the district court. Considerations of judicial economy will influence this decision.

In *Hunter v. United States,* 101 F.3d 1565, 1575 (11th Cir.1996) (en banc),[4] the district court had granted a COA, but had neglected to indicate for which of the issues the applicant had made a substantial showing of the denial of a constitutional right, in accordance with section 2253(c)(3)'s command. We remanded the case to the district court so it could perform this statutorily mandated function. *Hunter,* 101 F.3d at 1584. We also remanded the case because the petitioner had raised numerous claims in his application for a COA and it was impossible for us to glean from the record which issue or issues the district court

---

[3]Subsection (c), as amended by the AEDPA, provides:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

[4]*See supra* note 2.

thought worthy of appellate review.[5] *Cf. Murray v. United States,* 145 F.3d 1249, 1250-51 (11th Cir.1998) (limiting appellate review to the issue or issues specified in the COA).

We are faced in the instant appeal with a case similar to *Hunter,* and as with *Hunter,* remanding the matter to the district court is the proper course of action. *See, e.g., Hunter,* 101 F.3d at 1584 (noting that "we remand the case to the district court for compliance with the requirement of 28 U.S.C. § 2253(c)(3) that the certificate of appealability indicate which specific issue or issues satisfies the § 2253(c)(2) standard"); *Edwards v. United States,* 114 F.3d 1083, 1084-85 (11th Cir.1997) (per curiam) (concluding that "[b]ecause appeals ... filed after the effective date of the Antiterrorism and Effective Death Penalty Act are ineffective without a COA, [this appeal is] not before us on the merits" and remanding the case to the district court to grant or deny a COA); *United States v. Weaver,* 195 F.3d 52, 53 (D.C.Cir.1999) (stating that "we must remand the record for the district court to specify the issue or issues for appeal"); *Muniz v. Johnson,* 114 F.3d 43, 45-46 (5th Cir.1997) (stating that "we conclude that when a district court issues a CPC or COA that does not specify the issue or issues warranting review, as required by 28 U.S.C. § 2253(c)(3), the proper course of action is to remand to allow the district court to issue a proper COA, if one is warranted"); *Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1076 (6th Cir.1997), *overruled in part on other grounds by Lindh,* 521 U.S. at 322-23, 117 S.Ct. at 2061 ("Because the certificate issued by the district court does not comply with [the requirements of 28 U.S.C. § 2253(c)], we believe it would be improper for us to examine the merits of Lyons's petition. Accordingly, we remand the case to allow the district court to issue a proper certificate of appealability consistent with this opinion."). *But cf. Franklin,* 215 F.3d at 1199 (holding that the later panel could "fix" the deficient CPC, which had been issued by a single circuit judge after the district court had denied a CPC, even though a COA rather than a CPC should have been issued).

To be faithful to the amended version of section 2253(c), and Supreme Court and Eleventh Circuit precedent, we vacate the district court's CPC and remand the case to the district court with the instruction that the court "indicate which specific issue or issues satisfy" the standard of a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2), (3).

SO ORDERED.

---

[5]In certain circumstances, such as when a petitioner presents only one claim to the district court, remand for a determination of what issues merit review under section 2253(c) may be unnecessary. *See, e.g., Else v. Johnson,* 104 F.3d 82, 83 (5th Cir.1997). The instant case is markedly different, however, because Peoples presented not one, but twenty-six claims to the district court.