**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 6 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GREGORY DALE ENGLISH,

        Petitioner-Appellant,

v.

R. MICHAEL CODY,

        Respondent-Appellee.

No. 00-5115

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 95-CV-753-B)**

---

Submitted on the briefs:

Gregory Dale English, Pro se.

---

Before **BRISCOE** , **ANDERSON** , and **MURPHY** , Circuit Judges.

---

**MURPHY** , Circuit Judge.

Petitioner-appellant Gregory Dale English appeals from the district court's order denying his petition for a writ of habeas corpus. This matter comes before us on English's request for a certificate of appealability (COA). [1]

This case was filed in district court prior to the AEDPA amendments to 28 U.S.C. § 2254. For this reason, we apply the pre-AEDPA version of that statute to English's claims. See Lindh v. Murphy, 521 U.S. 320 (1997). English's appeal, however, was filed in this court after the effective date of the AEDPA amendments. Therefore, AEDPA's COA requirement applies to this appeal. See Slack v. McDaniel, 529 U.S. 473, 482 (2000).

In order to receive a COA, English must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this standard if he shows that his issues "are debatable among jurists, or that a court could resolve the issues differently, or that the questions deserve further proceedings." United States v. Sistrunk, 111 F.3d 91, 91 (10th Cir. 1997).

In our previous decision in this case, we vacated the district court's interlocutory decision refusing to apply a procedural bar to English's claims of ineffective assistance of counsel. English v. Cody, 146 F.3d 1257, 1265 (10th

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Cir. 1998). We remanded to the district court for a determination of whether English's ineffective assistance of counsel claims embraced matters in the trial record, or whether they required enlargement of the record. Id. at 1264. If the district court concluded that English's ineffective assistance claims concerned matters entirely manifest within the record of his state court appeal, these claims would be procedurally barred. Id. If, on the other hand, English's claims required further supplementation of the record on appeal or additional fact-finding, the district court was to consider whether Oklahoma's remand procedure was adequate for that purpose. Id. at 1264-65. If the remand procedure was inadequate, we instructed the district court to refuse to apply a procedural bar and to address English's ineffective assistance claims on the merits. Id. at 1265.

On remand, the district court found that:

(1) English's underlying Confrontation Clause claim had been fairly presented to the Oklahoma Court of Criminal Appeals on direct appeal and was not procedurally barred. It found that a Confrontation Clause violation had occurred, but that the violation was harmless because there was adequate evidence of English's guilt;

(2) English's underlying claim concerning impermissibly suggestive photo identification procedures was procedurally barred;

(3)  English's claims of ineffective assistance of trial counsel were procedurally barred.  It found that English had separate counsel at trial and on appeal, and that his ineffective assistance of trial counsel claims embraced matters within the trial record.  In light of this finding, the district court found it unnecessary to decide whether Oklahoma's remand procedure was adequate to provide further factual development;

(4)  English's claims of ineffective assistance of appellate counsel pertaining to counsel's failure to raise his ineffective assistance of trial counsel claims were meritless.  Since these claims failed on their merits, English could not satisfy the standard for an ineffective assistance of appellate counsel claim.

In this appeal, English argues the following:  (1) the record was insufficient to determine his ineffective assistance of counsel claims; (2) the district court should have held an evidentiary hearing on his claims; (3) all of the evidence presented to the jury was tainted; and (4) he is actually innocent.  To the extent that English's issues involve attacks on the district court's procedural rulings, to receive a COA, English must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."     Slack , 529 U.S. at 484.  In assessing his claims,  "[w]e review the district court's legal conclusions de novo and its factual

-4-

findings under the clearly erroneous standard." Ross v. Ward , 165 F.3d 793, 798 (10th Cir. 1999).

1. Application of procedural bar to suggestive photo identification claims

English claims that eyewitnesses Kerry Wilburn and Paul Rusher were shown unnecessarily suggestive pre-trial photographic lineups. Before they were shown the lineups, he argues, each witness failed to identify English as the man who committed the robberies. Afterwards, however, they were persuaded by the lineups to change their minds and to implicate English. He argues that his counsel was ineffective in failing to challenge the photo lineups.

The district court concluded that this ineffective assistance claim was procedurally barred because English failed to raise it on direct appeal in state court and the claim concerned matters entirely manifest within the state court record. English argues that the district court should not have applied procedural bar because the record is insufficient to determine his claim. Alternatively, he argues that he was entitled to an evidentiary hearing on this claim to further develop the record.

English identifies four items that he believes are missing from the record and required for resolution of this claim: (1) evidence that Wilburn and Rusher initially misidentified him; (2) evidence concerning the unnecessarily suggestive photo identification procedures; (3) evidence concerning trial counsel's

knowledge of the identification procedures; and (4) evidence concerning his attorney's efforts put forth in developing the identification procedures issue. Appellant's Opening Br. at 16B. Even assuming that the record is incomplete and procedural bar inappropriate, we cannot grant English a COA because he has failed to make a debatable showing that his suggestive identification claim, or any of his claims, for that matter, states "a valid claim of the denial of a constitutional right." Slack, 529 U.S. at 484.

In order to prevail on a claim of an unduly suggestive photographic lineup, a defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. See United States v. Wade, 388 U.S. 218, 240 n.31 (1967). It is only after the defendant meets this burden that the burden shifts to the government to prove that the identification was reliable independent of the suggestive procedure. Id. It is only necessary to reach the second element of the inquiry if the court first determines that the array was impermissibly suggestive. See United States v. Sanchez, 24 F.3d 1259, 1261-62 (10th Cir. 1994).

Although he argues about the reliability of the eyewitnesses' testimony, English has never advanced any facts that show the identification procedures used in his case were impermissibly suggestive. English complains about the use of a second lineup containing his picture, after a witness chose the wrong picture from the first lineup, but he fails to show that this is itself impermissibly suggestive.

Moreover, there was abundant evidence that the lineups were not suggestive. Before any evidence was presented to the jury, witness Kerry Wilburn took the stand in response to counsel's motion to suppress identification. With regard to the lineup, he testified that the officers did nothing to suggest which of the men in the photos was in custody, or which he should identify. Trial Tr. at 128-29. The trial court viewed the photographs from the lineup and stated that they "appear to be an excellent lineup. I don't see any problems or any discrepancies that would focus in on any one individual." Id. at 129. The state court's factual findings as to this issue are binding on this court. [2]

English does not identify anything suggestive about the photographs or suggest anything that his attorney might have presented that would have met his evidentiary burden of showing they were suggestive. Thus, even if there is a controversy about the district court's determination that this issue was procedurally barred, English fails to meet his burden of showing that jurists of reason could find that the underlying issue states a valid claim of a denial of a constitutional right. For this reason, he is not entitled to a COA as to this issue.

---

[2]   The pre-AEDPA version of § 2254(d) requires us to presume the correctness of state court findings of fact unless the appellant has made a showing that those findings fell within one of the eight enumerated categories of unreliability. See 28 U.S.C. § 2254(d) (1994); see Brecheen v. Reynolds, 41 F.3d 1343, 1348 n.1 (10th Cir. 1994). English has not made such a showing.

It follows that English's ineffective assistance of appellate counsel claim based on the photographic lineup also fails to earn him a COA. If the underlying issue was not valid, his counsel was not ineffective for failing to raise it on direct appeal. Nor is English entitled to an evidentiary hearing, since he has identified no dispute about whether the photographic lineup was suggestive which would require further factual development of the record. See Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993) (stating, in pre-AEDPA case, that evidentiary hearing is not required where there is no factual dispute). Finally, as will be seen, English's claim of actual innocence is unsupported by the record and also fails to support his application for a COA.

2. Application of harmless error to Confrontation Clause claim

> Confrontation Clause violations . . . are constitutional trial errors subject to harmless error analysis. A federal court reviewing a state court determination in a habeas proceeding should not grant relief unless the court finds the trial error had substantial and injurious effect or influence in determining the jury's verdict. To obtain relief for the error, the habeas petitioner must establish that it resulted in actual prejudice. Where a court is in grave doubt as to the harmlessness of the error . . . the habeas petitioner must win. We examine [the challenged] statement in light of the entire record to determine the error's possible effect on the jury.

Crespin v. New Mexico, 144 F.3d 641, 649 (10th Cir. 1998) (citations and quotations omitted).

English contends that the district court improperly relied on a harmless error analysis in deciding his Confrontation Clause claim against him, because all

of the evidence against him is tainted. He reasons that all the eyewitness identification is tainted because it was developed through a suggestive lineup. He further argues that the transcript of his alleged accomplice's plea hearing cannot be used against him, because of the Confrontation Clause problem. Once these items of evidence have been excluded, English contends there is no remaining evidence that can form the basis of a finding of harmless error.

As we have just discussed, English's claim of a suggestive lineup is unsupported and cannot be used to exclude the eyewitness evidence from consideration. Construing English's pro se brief broadly, however, we perceive another facet to his claim. English appears to be arguing that because of problems with the photographic lineup, the eyewitness testimony was not sufficiently reliable to support the harmless error determination. To address this argument, and to evaluate the district court's determination of harmless error, we summarize the evidence presented at trial.

A. Wilburn testimony

Kerry Wilburn testified that on August 2, 1985, at approximately 11:00 p.m., he was working at the Safeway store at 61st and Lewis in Tulsa. James Longley, a fellow employee, unlocked the front door. As Wilburn was walking out, English came up to Wilburn and told him to get back into the store and to lie down in front of the booth. English had a gun at his side.

At the time English approached him, Wilburn was approximately five feet away from English. Wilburn was looking at English's face and what he had in his hand. Although the only available light came from inside the store through the glass doors, Wilburn stated he could "see pretty good" and was "pretty much" able to see English's face clearly. Trial Tr. at 135. Wilburn specifically remembered that English was wearing sunglasses, a bandana around his head, a sweatshirt cut off around mid-bicep, blue pants with a red stripe going around the side, white tennis shoes, and a baseball cap. None of these items of clothing was visible in the picture of English Wilburn subsequently viewed in the photographic lineup. Wilburn testified that he was "100 percent sure" that the robber was English. Id. at 143.

English told Longley to go into the booth, to open the safe, and to get nothing but big bills. He told Wilburn to be calm, to be cool, not to be a hero and to stop looking at him. Wilburn saw English grab the bag with money in it from Longley. In all, Wilburn estimated that he had three or four minutes to look at English.

Wilburn also testified to the events of the second robbery, on November 30, 1987. On that day, he was working at Safeway at around 10:50 p.m. when he heard someone talking. He saw English squatted down saying "'Hurry up. Nothing but big bills'" and "'Don't try to be a hero.'" Id. at 141. English told

him to be cool and just stand there. Wilburn recognized English's voice from the earlier robbery.

At the time of the November robbery, English was wearing much the same attire as during the previous robbery: a bandana, sunglasses, a baseball cap, a blue jean jacket or some other kind of jacket, pants, tennis shoes, but no sweatshirt. Wilburn was able to look at him for approximately two minutes. He stated he was certain that English was the man who robbed the Safeway store on November 30, 1987.

Wilburn testified that English displayed particular quirks during the August and November robberies. During the August robbery, English twitched his eyes when Wilburn looked at him. During the November robbery, English seemed jumpy, like he "wasn't all there." Wilburn noticed the same mannerisms when he later saw English after his arrest.

Wilburn was cross-examined concerning the photographic lineups. He stated that he was first presented with a lineup of five pictures at his home. English's picture was not in this lineup. None of the pictures looked familiar, although he did select one that he thought had the same kind of body structure as the robber. He did not initial this picture; the police thanked him, and left. Sometime later, an officer presented him at work with a second photo lineup containing different photos, including a photograph of English. Wilburn picked

out English's picture from this lineup and initialed it on the back at the officer's request.

On redirect, Wilburn clarified that he had not actually selected anyone from the first lineup as the robber. English complains that this testimony is inconsistent with Wilburn's previous testimony at the preliminary hearing. At the preliminary hearing, Wilburn stated flatly that after viewing the first lineup "I picked out a guy and they said that wasn't him." Preliminary Hearing Tr. at 15.

English submits that the inconsistency in Wilburn's testimony concerning the photographic lineup makes him inherently unreliable as a witness. We disagree. Although Wilburn gave a more nuanced version of his prior mis-identification at trial, stating that he had only identified someone with "the [same] kind of body structure" as the robber, Trial Tr. at 163, there is no doubt that he picked out English right away when presented with his picture in the second lineup. Moreover, Wilburn was unequivocal in identifying English as the robber at trial. He provided an extremely detailed description of the clothing English was wearing at the time of each robbery, bolstering the credibility of his observations. Any alleged inconsistency does not undermine his testimony taken as a whole.

B.  Rusher testimony

-12-

Paul Rusher testified that on the evening of November 30, 1987, at about 10:50, he was pulling the extra checks and cash out of the tills. As he was walking back to the manager's booth, a man told him he wanted all his money and the big bills. The man told him to hurry and not to be a hero. Rusher was looking straight at the man from about ten feet away; the lighting was "pretty good." Id. at 172. Rusher identified English as the robber.

Rusher saw that English appeared to be wearing a gun on his belt. He described English's clothing using a description similar to the description Wilburn gave. Rusher gave English the money he requested, about $1200. He later picked English's photo out of a lineup. He testified that he was "100 percent certain" that English was the robber. Id. at 175.

This eyewitness testimony, coupled with the testimony of officers who prepared and presented the lineups and testimony about the likelihood that the two robberies were committed by the same person, overwhelmingly implicated English in the robberies. English presented two witnesses in his defense in an attempt to provide an alibi on his behalf. These witnesses, however, were equivocal as to the date and time they claimed to have seen English. In rebuttal, the state presented the testimony of an employee of the court clerk's office. She testified that when she told English that he had warrants outstanding for robberies of Safeway stores, he replied "'Oh, yeah, I remember doing those.'" Id. at 255. In

-13-

light of the overwhelming evidence properly presented to the jury, we are confident that the constitutional error did not have a substantial and injurious effect in determining the jury's verdict.

Since the error was harmless, English fails to show that his trial attorney was ineffective in failing to raise the Confrontation Clause issue. Furthermore, his appellate attorney was not ineffective in failing to raise the issue of trial counsel's ineffectiveness, because the error was harmless. We conclude that English has not shown entitlement to a COA with regard to his Confrontation Clause issues.

English's request for a COA is DENIED and we DISMISS this appeal.