FILED
United States Court of Appeals
Tenth Circuit

November 29, 2007

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBIN V. TALLY,

      Petitioner - Appellant,

      v.

JOE ORTIZ, Director, Colorado
Department of Corrections; RON
LEYBA, Warden, San Carlos
Correctional Facility, Pueblo,
Colorado; JOHN SUTHERS, Attorney
General, State of Colorado,

      Respondents - Appellees.

No. 06-1523

D. Colo.

(D.C. No. 06-cv-188-REB)

**ORDER DENYING CERTIFICATE OF APPEALABILITY
& DISMISSING APPEAL**

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Robin Tally filed a 28 U.S.C. § 2254 petition for a writ of habeas corpus.

The district court denied the petition as well as Tally's request for a certificate of

appealability (COA). Tally renews his request for a COA here. *See* 28 U.S.C.

§ 2253(c)(1)(A).  We deny a COA and dismiss this incipient appeal.

## I.  BACKGROUND

Tally repeatedly shot a former co-worker on August 24, 1995.  He initially pled not guilty, but later changed his plea to not guilty by reason of insanity. Pursuant to a court order, Tally entered the Colorado Mental Health Center on December 14, 1995.  He was discharged at the end of January 1996.  Dr. David Johnson, a certified forensic psychiatrist, concluded Tally suffered from a "personality persecutorial type trait," but was sane at the time of the shooting. (R. Vol. V at 7.)  Tally was committed a second time in February 1996 to determine his competency to stand trial.  In March, Dr. Johnson determined Tally was not competent to stand trial due to the development of a delusional disorder. The delusional disorder affected Tally's interpretation of reality to the point he was unwilling to accept the victim's death.  When attempts at counseling proved unsuccessful, Dr. Johnson prescribed medication for the disorder but Tally refused the medication.

Tally became increasingly agitated and, on May 2, 1996, made threats to the staff.  As a result, he was administered psychotropic medication pursuant to emergency protocol.  The prosecution moved the court to continue the involuntary medication beyond the ten-day emergency period.  The court held a hearing on May 13, 1996, to address Tally's need for medication and the possible side effects.  Dr. Johnson testified Tally had "shown extremely dangerous behavior"

and opined that if medication were to cease Tally would become increasingly dangerous to others. (*Id.* at 20.) After a detailed discussion of the likelihood and possible side effects of the medication, Dr. Johnson reiterated the administration of anti-psychotic medication was necessary to prevent a significant and likely long term deterioration in Tally's medical condition and to prevent the likelihood of Tally causing serious bodily injury to others at the institution. Finally, Dr. Johnson averred the treatment was the least intrusive alternative and Tally's need for the medication was sufficiently compelling to override any legitimate interest in refusing treatment. The court granted the prosecution's motion, determining continuing involuntary medication was the least intrusive means available to prevent significant deterioration in Tally's condition and to protect others.

In August 1996, Dr. Johnson reported Tally had been restored to competency, in large part due to the continuing involuntary medication. Following a hearing, the court determined Tally was competent but ordered the involuntary medication be continued. In October 1996, Tally moved to discontinue the medication, claiming he could not be medicated against his will after being found competent. The trial court denied the motion without a hearing, adopting its findings from the May hearing that the medication was necessary to maintain Tally's competency and to protect others.

Tally's trial began on January 6, 1997. The jury found him guilty of first degree murder and Tally was sentenced to life imprisonment without parole. The

Colorado Court of Appeals affirmed his conviction. *People v. Tally*, 7 P.3d 172 (Colo. App. 1999) (*Tally I*), *cert. denied sub nom., Tally v. Colorado*, 535 U.S. 1082 (2002). Tally filed a motion in state district court to vacate his conviction pursuant to Rule 35 of the Colorado Rules of Criminal Procedure. The district court denied the motion without a hearing on June 17, 2003. Tally appealed to the Colorado Court of Appeals which affirmed in an unpublished decision. *People v. Tally*, No. 03CA1723, 2005 WL 1119765 (Colo. App. May 12, 2005). The Colorado Supreme Court denied Tally's subsequent petition for certiorari. *Tally v. People*, No. 05SC583, 2006 WL 381421 (Colo. Jan 17, 2006).

Thereafter, Tally filed a § 2254 petition in the United States District Court for the District of Colorado asserting seven claims. The district court dismissed the petition, concluding the rulings of the Colorado Court of Appeals on six of his claims were not contrary to clearly established federal law and the remaining claim was procedurally barred. *Tally v. Ortiz*, No. 06-cv-00188, 2006 WL 3201313 (D. Colo. 2006) (*Tally II*). The district court denied Tally's request for a COA.

## II. CERTIFICATE OF APPEALABILITY

A COA is a jurisdictional prerequisite to our review. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). We will issue a COA only if Tally makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, he must establish that "reasonable jurists

-4-

could debate whether . . . the petition should have been resolved [by the district court] in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quotations omitted). Insofar as the district court dismissed his habeas petition on procedural grounds, Tally must demonstrate both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* We review the district court's factual findings for clear error and its legal conclusions *de novo. English v. Cody,* 241 F.3d 1279, 1282 (10th Cir. 2001).

Tally wishes to present five issues on appeal, contending the trial court erred in: (1) allowing the prosecution to use Tally's silence during a sanity examination as evidence of guilt in violation of his right to remain silent and his right to due process; (2) foreclosing Tally's right to cross-examine Dr. Johnson as to the reason for Tally's silence during the sanity examination; (3) failing to hold an evidentiary hearing or make required findings prior to denying Tally's request to cease his involuntary medication; (4) determining Tally's waiver of his right to

-5-

testify was voluntary; and (5) concluding Tally's challenge to the constitutionality of Colorado's competency provision was procedurally barred.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "work[ed] substantial changes" to the power of federal courts to grant habeas corpus relief. *Felker v. Turpin,* 518 U.S. 651, 654 (1996). "AEDPA limited rather than expanded the availability of habeas relief." *Fry v. Pliler*, 127 S.Ct. 2321, 2327 (2007); 28 U.S.C. § 2254(d)(1). It allows a state court decision to be set aside on federal habeas review *only* if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Fry*, 127 S.Ct. at 2326.[1] The statute sets forth preconditions, it is not "an entitlement." *Id.* at 2327.

"'[C]learly established Federal law' in § 2254(d)(1) refers to the 'holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 127 S.Ct. 649, 653 (2007) (quoting *Williams v. Taylor,* 529 U.S. 362, 412 (2000)). To be "contrary to" clearly established Federal law, the state court must apply "a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confront[] a set of facts that are materially indistinguishable from a decision of [the] Court and

---

[1] Tally's counsel are to be complimented. They restricted their argument to United States Supreme Court cases. It is a refreshing change from what is unfortunately typical – citation to and argument based upon cases from inferior federal courts, state courts and a host of other irrelevant authorities.

nevertheless arrive[] at a result different from [Supreme Court] precedent." *Williams,* 529 U.S. at 405-06. When the court confronts facts that are merely similar to those in a Supreme Court precedent, a different result is not contrary to clearly established Federal law. *See Lockyer v. Andrade*, 538 U.S. 63, 74 (2003).

"The unreasonable application clause of § 2254(d)(1) applies when the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (quotations and citation omitted). The state court's application must be "objectively unreasonable," and will not be overturned because it is merely erroneous or incorrect. *Lockyer*, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *see Bell v. Cone*, 535 U.S. 685, 699 (2002). This standard represents "a substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007).

Finally, § 2254(d) requires "state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2003). "[R]eadiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Id.* Indeed, we are required to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with clear and convincing evidence." *Schriro*, 127 S.Ct. at 1940 (quotations omitted). With these standards in mind, we address Tally's claim.

# III. DISCUSSION

A.      Fifth Amendment Right to Remain Silent

When Tally pled not guilty by reason of insanity, the trial court advised

him:

> A defendant who places his or her mental condition at issue by pleading not guilty by reason of insanity . . . waives any claim to confidentiality or privilege as to communications made by you to a physician or psychologist in the course of an examination . . . for the purpose of any trial or hearing on the issues of such mental condition. . . .
>
> You shall have the privilege against self incrimination during the course of an examination pursuant to this order. The fact that you are not cooperative with a psychiatrist or other personnel conducting the examination may be admissible in your trial on the issues of insanity or competency.

(R. Vol. III at 5.)[2]

---

[2] The advisement conforms with Colo. Stat. Ann. § 16-8-106(2)(b) which provides:

> The defendant shall have a privilege against self-incrimination during the course of an examination under this section. The fact of the defendant's noncooperation with psychiatrists and other personnel conducting the examination may be admissible in the defendant's trial on the issues of insanity or competency and in any sentencing hearing . . . .

Colo. Stat. Ann. 16-8-107(1.5)(a) provides in relevant part:

> [E]vidence acquired directly or indirectly for the first time from a communication derived from the defendant's mental processes during the course of a court-ordered examination . . . is admissible only as to the issues raised by the defendant's plea of not guilty by reason of insanity, and the jury, at the request of either party, shall be so instructed; . . .

When Dr. Johnson evaluated Tally to determine his mental state at the time of the crime, Tally remained silent on the advice of counsel. At trial, Dr. Johnson testified as follows:

Q: Were you able to interview Mr. Tally for the issue of sanity?

A: No, I was not.

Q: And was that because he refused to talk with you?

A: Yes.

(R. Vol. XII at 762.) Dr. Johnson explained how he was able to form an opinion despite Tally's lack of communication:

> I actually have done other cases like this where the defendant has not wanted to talk to me about the incident or offense, or for whatever reason. Sometimes I feel like I can form an opinion anyway and sometimes I can't. If I can't form an opinion, I will just say that. I will just tell the Court . . . because the defendant wouldn't talk to me, I'm not able to form an opinion within a reasonable degree of medical certainty. However, in this case, I feel I could form a reasonable opinion because I had such an abundance of other information.

(Id. at 763.) He stated he paid particularly close attention to the video tape interview taken about an hour after Tally turned himself in. Tally claims the admission of this testimony violated his right to remain silent and was contrary to *Wainwright v. Greenfield*, 474 U.S. 284 (1986) and *Doyle v. Ohio*, 426 U.S. 610 (1976). The Colorado Court of Appeals rejected this argument because "[a] defendant's sanity is not an element of the offense. Hence, a defendant's right against self-incrimination is not implicated when testimony is admitted only for

the purpose of establishing defendant's sanity." *Tally I*, 7 P.3d at 182. Moreover, "[u]nlike in . . . *Wainwright v. Greenfield, . . .* in which the defendants had been affirmatively assured that their silence could not be used against them, no such advice was given defendant here. On the contrary, he was specifically informed that if he refused to cooperate with the examining physician, such non-cooperation could be referred to at his trial." *Id.* The federal district court determined the conclusions of the Colorado Court of Appeals were not contrary to nor involve an unreasonable application of clearly established federal law. The district court was correct.

Tally concedes he was advised that his non-cooperation could be used at trial. He contends he was not advised, however, that the exercise of his right against self-incrimination could be considered the equivalent of non-cooperation. While we question Tally's rationale that failing to speak to the psychiatrist, for whatever reason, could be considered cooperation, the fact remains his silence was not used to overcome his insanity plea or establish his guilt. Therefore, this case is distinguishable from *Wainwright* and the other Supreme Court cases cited by Tally. *See Wainwright*, 474 U.S. 284, 292 (1986) ("it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. It is equally unfair to breach that promise by using silence to overcome a defendant's plea of insanity.") The prosecutor's questioning allowed

-10-

Dr. Johnson to explain why he believed he could make a sanity determination without being able to communicate with Tally. While Dr. Johnson made a comparison between Tally's initial silence and his later loquaciousness at the time he was declared incompetent, he was referring to the difference in Tally's demeanor on the video tape and his later behavior, not Tally's silence during the interview.

In addition, there is no Supreme Court case stating the admission of statements made – or not made – in a mental evaluation violates the Fifth Amendment. Indeed, the cases appear to indicate otherwise. For example, in *Buchanan v. Kentucky*, the Court held the state's use of a psychiatric report solely to rebut defendant's "mental status" defense did not violate defendant's Fifth or Sixth Amendment rights. 483 U.S. 402 (1987). The Court reasoned, "if a defendant requests [a psychiatric] evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of an examination the defendant requested. The defendant would have no Fifth Amendment privilege against the introduction of this psychiatric testimony by the prosecution." *Id*. at 422-23. In *Estelle v. Smith*, the Court distinguished a judge-ordered competency exam used in sentencing without notice of his right to remain silent from "sanity examination[s] occasioned by a defendant's plea of not guilty by reason of insanity." 451 U.S. 454, 465 (1981). The Court noted, "[w]hen a defendant asserts the insanity defense and introduces

-11-

supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case." *Id.* Tally has not demonstrated the state court violated clearly established federal law.

B.     Right to Present the Reason for Tally's Silence

Tally claims he was deprived of due process and his rights under the Confrontation Clause when the trial court did not allow him to solicit from Dr. Johnson or Dr. Atwell the reason he remained silent during the initial interview. Tally cites, *inter alia*, *Delaware v. Van Arsdall*, 475 U.S. 673 (1986) and *Chambers v. Mississippi*, 410 U.S. 284 (1973). The Colorado Court of Appeals and the federal district court agreed the trial court did not err because the reason for Tally's silence was irrelevant. We agree as well.

While trial judges "retain wide latitude" in determining the scope of cross-examination, "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." *Van Arsdall*, 475 U.S. at 679, 680 (quotations and citation omitted). In *Van Arsdall*, the trial court precluded any inquiry into the possible bias of a primary witness. The Court concluded that "cutting off all questioning about an event . . . that a

-12-

jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause." *Id.* at 679. Similarly, in *Chambers*, the defense was not allowed to present reliable evidence that a witness for the state had orally and through a written confession (later rescinded), admitted guilt for Chambers' charged offense. The trial court refused to allow Chambers to cross-examine the witness on credibility. The Court held that preventing Chambers from presenting critical evidence "denied him a trial in accord with traditional and fundamental standards of due process." *Chambers*, 410 U.S. at 302.

Tally's attempt to equate evidence of counsel's advice to remain silent with the crucial credibility evidence in *Van Arsdall* and *Chambers* is a stretch and ultimately unavailing. Neither Dr. Johnson nor Dr. Atwell testified that Tally's silence during Dr. Johnson's first interview in any way affected their opinion as to whether Tally was sane at the time of the offense. Moreover, Tally does not suggest such cross-examination was needed to show bias or test the credibility of either witness. Thus, the Colorado Court of Appeals' determination was not contrary to or an unreasonable application of clearly established federal law.

C.     Involuntary Medication

Tally claims the trial court violated his right to due process as established in *Riggins v. Nevada*, 504 U.S. 127 (1992), when it denied his motion to rescind the order for involuntary medication without a hearing. The Colorado Court of

Appeals rejected this claim, noting the "administration of the drug was specifically found to be required to prevent defendant from seriously harming himself or others and to prevent a further deterioration in his mental condition. And, those justifications remained valid even after the court determined that the drug had had the additional effect of restoring defendant to a [competent] mental state . . . ." *Tally I*, 7 P.3d at 176-77. The appellate court recognized the importance of Tally's physical impression to the jury and the probability that it would be altered by the medication. However, it concluded the jurors were given substantial evidence of Tally's "mental state at or about the time of the killing and how the antipsychotic drug worked upon him to change that mental state." *Id*. at 177. The federal district court agreed, noting: "Except for the effect of the medication on Tally [restoration of competency], nothing in the record indicates that any of the bases for the trial court's May, 1996, order had changed significantly as of November, 1996." *Tally*, 2006 WL 3201313 at *6.

Tally argues the trial court's reliance on the May evidentiary hearing was erroneous and, once Tally requested another evidentiary hearing, the court was required to make specific findings of fact as to the effect of the drugs on Tally's demeanor at trial and his ability to assist in his own defense. Further, Tally contends the facts in this case are materially indistinguishable from *Riggins*. We disagree.

The Supreme court stated, "[t]he question whether a competent criminal

defendant may refuse antipsychotic medication if cessation of medication would render him incompetent at trial is not before us." *Riggins*, 504 U.S. at 136. These are precisely the facts here. Indeed, the holding in *Riggins* is that due process is satisfied "if the prosecution had demonstrated, and the District Court had found, that treatment with antipsychotic medication was medically appropriate and, considering less intrusive alternatives, essential for the sake of Riggins' own safety or the safety of others." *Id.* at 135. Moreover, in *Sell v. United States*, the Court expanded on the *Riggins* holding and concluded "the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." 539 U.S. 166, 179 (2003).

The trial court's evidentiary hearing in May specifically addressed the factors required by the Supreme Court in *Riggins* and *Sell*. Tally does not submit any evidence rebutting the state district court's conclusions that the medication was necessary for the safety of others and to maintain his competency. He does not claim the medication was not medically appropriate, nor has he submitted evidence the medication prevented his involvement in his defense. In fact,

counsel conceded if Tally were not medicated he would not be competent. Thus, the facts here are distinguishable from those in *Riggins* and *Sells*. Further, neither *Riggins* nor *Sells* requires the court to hold a second evidentiary hearing without some showing of changed circumstances. Consequently, the Colorado Court of Appeals' decision was not contrary to the Supreme Court's clearly established law.

D.      Voluntary Waiver

During trial, out of the presence of the jury, the court fully advised Tally of his right to testify at trial. Tally stated he understood, and had made "a free and voluntary choice" not to testify. (Vol. XII at 918.) However, three days later, Tally stated his decision was not "altogether a voluntary one," claiming he might have made a different decision if he were not being medicated because his medication prevented him from undergoing direct and cross-examination. (*Id.* at 920.) Tally claims the trial court erred in concluding his waiver was voluntary. He argues the Colorado Court of Appeals' decision to the contrary violates clearly established law as stated in, *inter alia*, *Godinez v. Moran*, 509 U.S. 389 (1993), and *Brooks v. Tennessee*, 406 U.S. 605, 613 (1972).

In *Godinez*, the Supreme Court stated, "[t]he focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually *does* understand the

-16-

significance and consequences of a particular decision and whether the decision is uncoerced." 509 U.S. at 401 n.12 (citation omitted). Contrary to Tally's assertion, the Colorado Court of Appeals considered both components referenced in *Godinez*. First, it addressed Tally's "competency" to voluntarily waive his right to testify stating "nothing beyond his ambiguous statement gave any indication that [Tally's] mental condition had deteriorated since the trial court's prior determination that he was competent." *Tally I*, 7 P.3d at 179. The appellate court next considered whether Tally actually understood the significance and consequences of his decision:

> [T]he very nature of [the] statement suggested that [Tally] was fully capable of understanding the proceeding and acting intelligently with respect to the advisement he had been given. [Tally's] recognition that, if he had not been on medication, his reaction to the *Curtis* advisement might have been different did not suggest, in any way, that he was not then competent.

*Id.* The Colorado court's application of the law was not objectively unreasonable or contrary to Supreme Court holdings.

E.    Procedural Bar

Tally maintains the federal district court erred in concluding his due process challenge to Colorado's statutory competency provision was procedurally barred. He claims the Colorado Court of Appeals refused to reach this issue in his second appeal because the issue had been decided in his first appeal.

"The procedural default doctrine and its attendant 'cause and prejudice'

-17-

standard are grounded in concerns of comity and federalism, and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack, . . ." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations and quotations omitted). Tally is required to "demonstrate cause for his state-court default of *any* federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim."[3] *Id.*

In *People v. Tally*, 03CA1723 (May 12, 2005) (unpublished), the Colorado Court of Appeals determined "the issue of [Tally's] competency was fully and finally litigated in the trial court and on direct appeal. Although [Tally] asserted a different legal argument in his post-conviction motion, specifically, that the competency standard was unconstitutional, it was based on the same underlying issue, whether [Tally] was competent to stand trial." (Petitioner's Appx. at 24-25.) The court concluded Tally was "precluded from further raising the issue of

---

[3] There is one exception to that rule, "the circumstance in which the habeas petitioner can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards*, 529 U.S. at 451. However, the Supreme Court has recognized this narrow exception in cases "where a constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense" and in death penalty cases where "the applicant could show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (citations and quotations omitted). Neither situation exists here.

his mental competency in a Crim. P. 35 proceeding."[4]  *Id.*  In essence, the Colorado Court of Appeals concluded the factual basis for the constitutional claim was resolved and his legal argument was not specifically raised in prior proceedings.  Because Tally has not presented cause for his failure to raise the constitutionality of the statute below, the remainder of Tally's argument is procedurally barred.

The district court's order of dismissal is not "reasonably debatable."  *Slack,* 529 U.S. at 484.  Tally has failed to make a sufficient showing that he is entitled to a COA.  His request for a COA is DENIED and the nascent appeal is **DISMISSED**.

ENTERED FOR THE COURT

Terrence L. O'Brien
Circuit Judge

---

[4]  Rule 35(c) states in relevant part: "The court shall deny any claim that was raised and resolved in a prior appeal or postconviction proceeding on behalf of the same defendant, . . .  The court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought . . ." Colo. R. Crim. P. 35(c)(vi) & (vii).