FILED
United States Court of Appeals
Tenth Circuit

**April 8, 2015**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JIMMIE ESTES THOMPSON,

Defendant - Appellant.

No. 14-5121
(D.C. Nos. 4:13-CV-00697-CVE-PJC
and 4:10-CR-00004-CVE-1)
(N.D. of Okla.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **LUCERO**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.[**]

---

Jimmie Thompson seeks a certificate of appealability (COA) to challenge

the district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or

correct his sentence. Thompson argues that the district court erred in finding he

had received a fair trial despite the government's failure to disclose impeachment

evidence concerning a government witness. According to the district court, the

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

witness in question was not critical to the government's case and thus the impeachment evidence at issue was not material and did not need to be disclosed.

Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we deny a COA and dismiss the appeal.

## I. Background

Tulsa police received an anonymous "Crime Stoppers" tip that Jimmie Thompson was involved in two bank robberies, a tip that was corroborated with information from a confidential informant. After further investigation, police also discovered that Thompson drove a purple Mercury Cougar, which eyewitnesses and security footage showed to be the robber's getaway vehicle. Thompson was eventually found in his Mercury Cougar in Claremore, Oklahoma and arrested.

After his arrest, Thompson was charged by indictment with two counts of bank robbery and several other crimes. Before trial, Thompson filed a motion to suppress evidence, arguing that he was arrested without probable cause and that there was no probable cause supporting the search warrant officers later used to search his car. Thompson advanced two principal arguments in his motion. First, he attacked the reliability of the sources implicating him in the crime, and, second, he argued the affidavit supporting the search warrant application was defective because it did not note that several eyewitnesses had failed to identify him in a photo lineup and that one eyewitness identified a getaway vehicle different from Thompson's. The court denied the motion to suppress after

holding a suppression hearing and taking testimony from Tulsa Police Department Detective Chris Stout, Claremore Police Department Investigator John Singer, and Federal Bureau of Investigation (FBI) Special Agent Matthew McCullough.

At the suppression hearing, Detective Stout testified about the investigation that eventually led officers to Thompson. Because Thompson was no longer in Tulsa, Detective Stout was not present at the arrest but coordinated with the Claremore Police Department and the FBI. Following the arrest, Thompson's vehicle was towed to an impound lot in Claremore. Detective Stout then provided Investigator Singer with case reports and helped him prepare an affidavit for a search warrant for the vehicle. Detective Stout also aided in the eventual search of the vehicle.

Investigator Singer testified that he first became involved with the investigation when Tulsa police requested assistance in locating and arresting Thompson, who was believed to be at the Claremore Indian Hospital. After arriving at the hospital, Investigator Singer testified that he observed Thompson in a vehicle matching the description of the getaway vehicle. After Special Agent McCullough arrived on the scene, Investigator Singer then assisted him in making the arrest. Investigator Singer then arranged for a local company to tow and impound Thompson's vehicle and ensured that it was placed in a locked storage facility and sealed. With Detective Stout's assistance, Investigator Singer later prepared and signed a search warrant affidavit for the vehicle, obtained a warrant,

and searched the car alongside Detective Stout. Both Detective Stout and Investigator Singer admitted that the affidavit did not mention either that several witnesses had failed to identify Thompson or that one witness identified a different getaway vehicle, but both testified that the weight of the evidence implicating Thompson was so great that they saw no point in including this additional information.

As is relevant here, Special Agent McCollough testified as to Thompson's arrest. Based on Detective Stout's summary of the investigation the district court found that there had been probable cause for the arrest. The court also found that the information omitted from the search warrant affidavit was not material and thus it denied Thompson's motion to suppress. The case proceeded to trial where Detective Stout, Investigator Singer, and Special Agent McCullough gave similar testimony. Thompson was subsequently convicted on all counts.

After exhausting his direct appeals, Thompson filed this motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Thompson argued that the government violated his rights to due process and a fair trial by failing to disclose impeachment evidence relating to Investigator Singer, as required by *Giglio v. United States*, 405 U.S. 150 (1972). Specifically, Thompson recently discovered that Investigator Singer was on probation with his department from 1999 to 2001 and, during that period, Investigator Singer caused an accident with another police vehicle. Investigator Singer then allegedly lied to his supervisor

about the accident, claiming to have hit a deer. Thompson argues that he should have had an opportunity to impeach Investigator Singer with this evidence at both the suppression hearing and at trial. The district court, however, found that the impeachment evidence was not material and thus that no *Giglio* violation occurred because Investigator Singer was not a critical witness to the government's case.

## II. Analysis

A COA is a jurisdictional prerequisite to our review of a § 2255 motion. *Allen v. Zavaras*, 568 F.3d 1197, 1199 (10th Cir. 2009) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). "We will issue a COA 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Id.* (citing *Miller-El*, 537 U.S. at 336). This, in turn, requires that the movant demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When assessing the movant's claims, "we review the district court's legal conclusions de novo and its factual findings under the clearly erroneous standard." *English v. Cody*, 241 F.3d 1279, 1282 (10th Cir. 2001) (internal quotation marks omitted).

Thompson has raised two issues on appeal. First, Thompson argues that the government violated his due process rights when it failed to disclose the impeachment evidence before his suppression hearing, as his ability to impeach

Investigator Singer may have affected the outcome of that hearing.  Second, Thompson argues that the government violated his rights to due process and a fair trial by failing to disclose the impeachment evidence before his trial began.[1]

Thompson has not demonstrated "that reasonable jurists could debate whether . . . [his] petition should have been resolved in a different manner." *Slack*, 529 U.S. at 484.  Although the government has a general duty to disclose impeachment evidence favorable to the defense under *Giglio*, a defendant hoping to show a violation "must establish 1) that the prosecution suppressed evidence; 2) that the evidence was favorable to the accused; and 3) that the evidence was material." *United States v. Hughes*, 33 F.3d 1248, 1251 (10th Cir. 1994).  Under the law of this circuit, "evidence is material under *Brady* if it impeaches a critical government witness." *United States v. Reese*, 745 F.3d 1075, 1088 (10th Cir. 2014).  "In instances where we have concluded that the allegedly suppressed impeachment evidence was material, we have stressed that the witness being impeached was absolutely critical to the government's case." *United States v. Cooper*, 654 F.3d 1104, 1123 (10th Cir. 2011); *see also United States v.*

---

[1] Thompson also made a prosecutorial misconduct argument below but has abandoned it on appeal.  The only reference to this argument in Thompson's application for a COA is a single line in the facts section of his application stating that the government's conduct constituted "[p]rosecutorial misconduct at the very least."  R., Doc. 104 at 4.  An issue not designated for review is generally waived, and a mere mention in another context is not enough to present an issue for appeal. *See Adams-Arapahoe Joint Sch. Dist. v. Cont'l Ins. Co.*, 891 F.2d 772, 776 (10th Cir. 1989).

*Buchanan*, 891 F.2d 1436, 1444 (10th Cir. 1989) ("[W]here a prosecuting witness is not key to the government's case, his credibility is not material . . . ."). A witness is critical when his testimony is "indispensable," *Douglas v. Workman*, 560 F.3d 1156, 1175 (10th Cir. 2009), of "paramount importance," *id.*, where the witness is the only link to the crime, *United States v. Torres*, 569 F.3d 1277, 1284 (10th Cir. 2009), or is otherwise "essential," *United States v. Robinson*, 583 F.3d 1265, 1271 (10th Cir. 2009). A witness is not critical where his testimony is duplicated by others, *United States v. Cooper*, 654 F.3d 1104, 1123 (10th Cir. 2011), where other evidence is overwhelming, *United States v. Smith*, 534 F.3d 1211, 1223 (10th Cir. 2008), or where the witness's testimony provides background information on an investigation, *United States v. Reese*, 745 F.3d 1075, 1088 (10th Cir. 2014).

Here, the district court correctly found that Investigator Singer was not a critical or key witness either to the suppression hearing or to Thompson's trial. At the suppression hearing, Investigator Singer testified about the arrest, the warrant preparation process, and the eventual search of the vehicle. This testimony was cumulative and thus not critical, *see Cooper*, 654 F.3d at 1123, because Special Agent McCollough testified to the same facts concerning the arrest while Detective Stout testified to the same facts concerning the warrant preparation process and the search of the vehicle. These three witnesses gave similar testimony at trial. Investigator Singer never gave any unique testimony

relevant to Thompson's guilt and thus does not qualify as a key or critical witness under our precedents. The failure to disclose impeachment evidence relating to Investigator Singer thus was not material and Thompson cannot make out a *Giglio* violation based on that nondisclosure. *See Reese*, 745 F.3d at 1088; *Cooper*, 654 F.3d at 1123; *Buchanan*, 891 F.2d at 1444.

Thompson has presented no arguments challenging the district court's findings; his application merely states that Investigator Singer was a key government witness without any further argument or support. As a result, we find no reason to conclude that Thompson has carried his burden of demonstrating that reasonable jurists could debate the district court's resolution of this matter.

## III. Conclusion

For the reasons given above, Thompson's application for a COA is DENIED and the appeal is DISMISSED.

Entered for the Court,


Timothy M. Tymkovich
Circuit Judge