FILED
United States Court of Appeals
Tenth Circuit

**January 9, 2012**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MIKEL RAY HENDERSON,

      Petitioner–Appellant,

v.

DAVID L. PARKER, Warden,

      Respondent–Appellee.

Nos. 11-7060, 11-7067
(D.C. No. 6:10-CV-00283-JHP-KEW)
(E.D. Okla.)

**ORDER DENYING A CERTIFICATE OF APPEALABILITY**\*

Before **LUCERO**, **ANDERSON**, and **GORSUCH**, Circuit Judges.

Mikel Henderson, an Oklahoma state prisoner proceeding pro se, applies for a

Certificate of Appealability ("COA") to challenge the district court's dismissal of his 28

U.S.C. § 2254 petition. Because all of Henderson's claims are either procedurally barred

---

\* The case is unanimously ordered submitted without oral argument pursuant to
Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is not
binding precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. The court generally disfavors the citation of orders and judgments;
nevertheless, an order and judgment may be cited under the terms and conditions of 10th
Cir. R. 32.1.

or were reasonably adjudicated by Oklahoma courts, we deny a COA and dismiss his appeal.

## I

Police stopped Henderson, along with three passengers, for a traffic violation. Upon searching Henderson's vehicle, police discovered over 2500 pseudoephedrine tablets in a bag on the rear-seat floorboard. Police also found methamphetamine manufacturing equipment in the trunk. An Oklahoma jury convicted Henderson of unlawful possession of pseudoephedrine and sentenced him to life imprisonment and a $100,000 fine.

A number of events from Henderson's trial are relevant to this appeal. First, the Oklahoma court admitted all evidence from the vehicle that was within Henderson's reach, but suppressed any evidence that Henderson could not have reached from the driver's seat. Second, a witness testified that at Henderson's initial appearance he had declared that "everything in the car belonged to him" and that the passengers in the car "knew nothing about it." Finally, Henderson's attorney did not call to the stand Sherry Moore, who was riding in the back seat of Henderson's car when police stopped it. This omission is notable because Moore told police that the bag containing the pseudoephedrine belonged to a front-seat passenger instead of Henderson.

The Oklahoma Court of Criminal Appeals ("OCCA") affirmed Henderson's conviction. Henderson filed a post-conviction application in state court, alleging that his counsel was ineffective. The state court denied Henderson's application, and the OCCA

affirmed. Henderson then filed the instant habeas petition, which the district court denied.

## II

We may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Henderson must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quotation omitted).

Henderson's petition combines claims that he raised in state post-conviction proceedings with claims that no Oklahoma state court has reviewed. Because different standards apply to each class of claims, we consider them separately.

## A

Henderson raises two claims of ineffective assistance of counsel, both of which the OCCA found meritless. When a state court has considered a habeas petitioner's ineffective assistance claim on the merits, our court may reverse only if the decision was "contrary to, or involved an unreasonable application of clearly established Federal law," 28 U.S.C. §2254(d)(1), or was "based on an unreasonable determination of the facts." § 2254(d)(2). The established law governing ineffective assistance of counsel claims is derived from Strickland v. Washington, 466 U.S. 688 (1984). Under Strickland, Henderson must show that his counsel's performance fell below an objective standard of

reasonableness and that it resulted in actual prejudice to him.  Id. at 687, 694.  Thus, Henderson's petition can succeed on these claims only if we deem the OCCA's application of Strickland unreasonable.

Henderson first contends that counsel was ineffective for stipulating that police had sufficient probable cause to search and seize the bag containing pseudoephedrine. Given that Henderson had an outstanding warrant for possessing chemicals with the intent to manufacture methamphetamine and a drug dog had signaled the presence of contraband in his car, the OCCA concluded that the search and seizure was indeed constitutional, and counsel, therefore, was not ineffective.  We agree.

Next, Henderson claims that counsel was ineffective for opening the door to previously excluded evidence.  Under a pretrial ruling, the court suppressed drug-manufacturing materials found in Henderson's trunk.  During cross-examination of a state witness, however, defense counsel asked a question that led the witness to tell the jury about one of the chemicals found in the trunk.  Without determining whether counsel's mistake constituted deficient performance, the OCCA held that Henderson did not suffer any prejudice because of the error.  Given the large quantity of pseudoephedrine pills attributed to Henderson, the OCCA concluded that the guilty verdict would not have been different regardless of the alleged error.  Again, we agree. Accordingly, we deny COA for the claims reviewed by the OCCA.

**B**

Henderson also asserts a number of claims that he did not raise before the OCCA.

These include a bevy of unexhausted ineffective assistance of counsel claims. The most substantial of these claims concerns trial counsel's failure to subpoena the testimony of Sherry Moore. Moore was riding in the back seat of Henderson's car when it was stopped, and she told police that the garment bag containing the pseudoephedrine belonged not to Henderson but to a front-seat passenger.

Henderson also raises an unexhausted claim of prosecutorial misconduct focusing on a central issue in his trial: whether the pseudoephedrine tablets seized from Henderson's back seat were within his "reaching distance," and therefore admissible. The prosecutor introduced a diagram of the interior of Henderson's vehicle which depicted two front bucket seats. Using the diagram, the arresting officer testified that Henderson, while seated in his bucket seat, could have easily reached behind his seat to access the bag of pills resting on the rear floorboard. Henderson asserts that his vehicle does not have front bucket seats, but rather has a front bench seat. Thus, Henderson argues, the prosecution introduced misleading evidence on the "reachability" of the back-seat bag and failed to correct false witness testimony about Henderson's ability to reach the pills.

Although the substance of these claims may raise doubts, even serious doubts, about Henderson's trial, his failure to exhaust them strictly delimits our power of review. In general, a habeas petitioner must exhaust his claims in state court before this court may review them. 28 U.S.C. § 2254(b)(1). Were Henderson to return to state court to exhaust these claims, however, they would be procedurally barred under Oklahoma law, because

-5-

Henderson did not raise them in his initial application for state post-conviction relief. See Okla. Stat. tit. 22, § 1086 (all grounds for post-conviction relief must be raised in initial application). Henderson therefore must overcome an "anticipatory procedural bar" to proceed on these claims. Anderson v. Sirmons, 476 F.3d 1131, 1140 n.7 (10th Cir. 2007) ("'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if petitioners returned to state court to exhaust it.").

Henderson may circumvent this procedural bar by making either of two alternate showings: he may demonstrate "cause and prejudice" for his failure to raise the claim or he may show that failure to review his claim will result in a "fundamental miscarriage of justice." Id. at 1140. The latter exception is met when a petitioner can make a persuasive showing that he is actually innocent. House v. Bell, 547 U.S. 518, 536 (2006). Henderson principally relies on this exception to the procedural bar.

The "actual innocence" exception is available only in the "extraordinary" case when "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995). Although the petitioner must show some "new reliable evidence" of innocence to fall within the exception, actual-innocence claims must be evaluated in light of all the evidence in the case: "old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted." Id. at 327-28. Moreover, courts must weigh the reliability of the new exculpatory evidence, including "the timing of the submission and the likely

credibility of the affiants." Id. at 331-32.

Henderson bases his actual innocence argument on Sherry Moore's exculpatory statement, which was not presented to the jury that convicted him. However, this exculpatory statement must be balanced against the totality of the evidence in this case, including the methamphetamine-manufacturing materials found in Henderson's trunk and the incriminating statement he made at his initial appearance. Moore's statement is also uncorroborated. Accordingly, we find it clear that a reasonable juror, considering all the evidence in the case, could have found Henderson guilty beyond a reasonable doubt. We thus conclude that Henderson has not established actual innocence to the degree required to excuse his procedural default, and we are prevented from reviewing the merits of these claims.

### III

We **DENY** a COA and **DISMISS** the appeal.

Entered for the Court

Carlos F. Lucero
Circuit Judge