**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 29, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

JUSTIN WAYNE PRENTICE,

Petitioner - Appellant,

v.

STEVEN HARPE,

Respondent - Appellee.

No. 24-6134
(D.C. No. 5:22-CV-00053-JD)
(W.D. Okla.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **MATHESON**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

Defendant Justin Prentice, proceeding pro se,[1] requests a certificate of

appealability (COA) for the district court's denial of his 28 U.S.C. § 2254 petition

challenging his conviction for lewd acts with a minor. We deny a COA and dismiss this

matter.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Defendant proceeds pro se, we construe his arguments liberally, but "cannot take on the responsibility of serving as [his] attorney in constructing arguments and searching the record." _Garrett v. Selby Connor Maddux & Janer_, 425 F.3d 836, 840 (10th Cir. 2005).

## I.

Defendant, thirty-seven, often drove his friend H.W., home from work. H.W. lived with his nine-year-old daughter, M.W., and his mother whom M.W. called "Nana." H.W. contacted the police after M.W. made some concerning comments. M.W. told a police officer "that she was dancing in front of [Defendant] and when her dad came back in from using the bathroom that she asked her dad to leave so she could get to know [Defendant] better" and "that a couple weeks prior to . . . Thanksgiving . . . of 2017, . . . [Defendant] held a chocolate bar in his mouth about halfway—that he had bought from her—and told her if she wanted some that she would have to bite it off;" and "that around Thanksgiving of that time that [Defendant] had kissed her twice on the mouth. And then there was another incident where [Defendant] had kissed her and tried to force his tongue inside her mouth." R. vol. 1 at 244:10–23.

Police interviewed M.W on videotape, which prosecutors played at trial. M.W. also testified.

> M.W. stated that the weekend before Thanksgiving, she was selling chocolate bars for her school, [Defendant] bought one, put half of a piece in his mouth, and tried to make M.W. bite the other half. The weekend after Thanksgiving, M.W. and [Defendant] were again in the living room at M.W.'s Nana's house. M.W.'s Nana was in the kitchen and H.W. was not home. [Defendant] begged M.W. to kiss him by saying, "Kiss me, kiss me, kiss me." M.W. kissed him three times and the third time, [Defendant] put his tongue inside M.W.'s mouth. [Defendant] asked M.W. to kiss him a fourth time and she refused. According to M.W., at some point, [Defendant] told her not to tell anyone.
>
> The following Saturday, [Defendant] was again at M.W.'s Nana's house and, while H.W. was in the restroom, he asked M.W. to marry him. M.W. said that maybe she would in the future, then jokingly said, "Kiss me" to [Defendant] and then H.W. returned to the room.

2

R. vol. 1 at 325–26 (internal record citations omitted).

Defendant spoke to a detective about the incident. Defendant admitted to kissing M.W. three times and sticking his tongue out during the third kiss, but "stated that he was not trying to 'French kiss' M.W. but . . . instead . . . to gross her out." R. vol. 1 at 329. He also stated the incident reminded him of a time when he was seventeen in which an ex-girlfriend "took his keys, would not let him leave, dragged him to her bedroom, and . . . had sex [with him]." *Id.* at 330. He asked M.W. to marry him, and believed he could get an honest answer out of her because she was so young. He confessed that M.W.'s kisses made him feel special because he had not had sex for twenty years.

An Oklahoma jury found Defendant guilty of lewd acts with a minor. The state trial court sentenced him to 25 years' imprisonment. The Oklahoma Court of Criminal Appeals (OCCA) affirmed. He filed an application for post-conviction relief with the state trial court. The state trial court denied this application and the OCCA affirmed.

Defendant then filed his § 2254 petition. He argued that the statute under which prosecutors convicted him was unconstitutionally vague, that the jury had insufficient evidence to convict, and that trial and appellate counsel were ineffective. Adopting a magistrate judge's recommendations, the district court denied both his petition and a COA.

## II.

Defendants obtain a COA by "showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues

3

presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). COA requests incorporate the "deferential treatment of state court decisions" in the Antiterrorism and Effective Death Penalty Act (AEDPA). *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). Defendants "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Defendant's COA application presses the same arguments the district court rejected. We reject them all. The relevant statute, Okla. Stat. tit. 21, § 1123(A)(2), provides: "It is a felony for any person to knowingly and intentionally . . . touch . . . the body . . . of any child under sixteen (16) years of age in any lewd or lascivious manner . . . ." In Oklahoma, "[t]he words 'lewd' and 'lascivious' . . . have [the] same meaning and signify conduct which is lustful and which evinces an eagerness for sexual indulgence." *Huskey v. State*, 989 P.2d 1, 5 (Okla. Crim. App. 1999), *overruled in part on other grounds by A.O. v. State*, 447 P.3d 1179, 1182 (Okla. Crim. App. 2019). Defendant argues the statute does not "put a person on notice that the act of kissing was criminal." Appellant's Opening Br. at 12 (capitalization omitted). But the jury did not convict him for merely "kissing" M.W. The jury had to find Defendant acted in a lewd or lascivious manner, and he did so by putting his tongue in M.W.'s mouth. Reasonable jurists could not resolve this claim differently than the district court did.

4

Defendant also asserts the prosecutors presented insufficient evidence that he acted with lewd and lascivious intent when he kissed M.W. For this claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence before the jury included M.W.'s testimony, her videotaped interview, and testimony regarding Defendant's statements on his actions. Defendant could (and did) argue to the jury that kissing M.W. was wholly non-sexual. But the evidence does not compel that conclusion. So, it was not objectively unreasonable of the OCCA to reject his sufficiency-of-the-evidence argument. No reasonable jurist could disagree with the district court's resolution of this issue in his § 2254 application.

Finally, Defendant raises an ineffective assistance of counsel claim. But his COA application only recites the constitutional ineffectiveness standard and does not explain in any meaningful way how his trial or appellate counsel failed to effectively represent him or how those failures prejudiced his defense, let alone how reasonable jurists could debate the district court's claims resolution below.

We deny a COA and dismiss this matter. We grant Defendant's motion to proceed *in forma pauperis*.

Entered for the Court

Joel M. Carson III
Circuit Judge

5